UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# 10 CIV 1888

UNITED STATES SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

        v.

RICHARD VERDIRAMO, VINCENT L.
VERDIRAMO, ESQ., EDWARD MEYER, JR.,
and VICTORIA CHEN,

        Defendants.

Case No.

## COMPLAINT

Plaintiff United States Securities and Exchange Commission (the "Commission") alleges as follows:

### SUMMARY

1.     Between February and August 2005, Richard Verdiramo caused RECOV Energy Corporation ("RECOV" or the "Company"), a company of which Richard Verdiramo was the Chief Executive Officer, Chief Financial Officer, President and Chairman of the board of directors, to issue more than 3,047,495 shares of RECOV in unregistered, non-exempt transactions. The issuances were made to Edward Meyer, Jr., Victoria Chen, companies controlled by Richard Verdiramo and his father, Vincent L. Verdiramo, Esq., and to others, and resulted in illicit gains of at least $350,000 for Richard Verdiramo and his father. The issuances were made as part of a deal to sell a controlling interest in RECOV to Meyer and Chen, during the course of merger negotiations between RECOV and a private company which had hired Meyer as a merger consultant. The merger negotiations were terminated by the private company in August 2005 despite press releases issued by RECOV announcing that negotiations were in

the "final stages" and that the merger would close within weeks. By engaging in this conduct, Richard Verdiramo violated the anti-fraud provisions and registration requirements of the federal securities laws. He also engaged in other fraudulent, deceptive conduct in violation of the reporting, disclosure, record keeping and internal control provisions of the federal securities laws.

2.      Vincent L. Verdiramo aided and abetted the fraudulent share issuance scheme, in violation of the anti-fraud provisions of the federal securities laws, by participating in negotiations with Meyer regarding the sale and issuance of the shares and by using his attorney trust fund account to funnel the money Meyer and others paid for RECOV shares to a private company Richard and Vincent L. Verdiramo controlled for their personal use.

3.      Meyer, Chen, and Vincent L. Verdiramo all sold the illegally issued shares of RECOV in unregistered, non-exempt transactions in violation of the registration requirements of the federal securities laws for proceeds of at least $220,000, $45,000, and $30,000, respectively.

4.      In addition, in August 2005, Meyer sold some of his RECOV shares while in possession of material, non-public information about the status of RECOV's merger negotiations with a private company, in violation of the anti-fraud provisions of the federal securities laws, for proceeds of more than $40,000 and avoided losses of approximately $14,000.

5.      In October and November 2005, RECOV filed with the Commission a Form 10-K for the year ended March 31, 2005, a Form 10-Q for the quarter ended June 30, 2005, and a Form 10-Q for the quarter ended September 30, 2005. Richard Verdiramo, as RECOV's CEO, signed these filings, and knowingly or recklessly made materially false and misleading statements about RECOV's share issuances in violation of the anti-fraud provisions of the federal securities laws.

6.     These filings falsely represented that RECOV had issued shares of common stock without restrictive legends in conversion of convertible notes payable and that the company had received an opinion from counsel that the shares could be issued without restrictive legends.  In fact, Richard Verdiramo knew that none of the share recipients held RECOV notes payable and that the opinion from counsel he obtained did not opine on whether the shares in the specific transactions could be issued without restrictive legends.

7.     RECOV's filings also falsely stated that 6,100,000 restricted shares of RECOV were issued to Richard Verdiramo in April 2005 for services yet to be rendered by him and that Delaware law therefore required their subsequent cancellation.  As Richard Verdiramo knew, this statement was false because the board resolution he signed authorizing the issuance of those shares stated that they were being issued for services already rendered.

8.     By making these materially false and misleading statements in RECOV's Form 10-K and Forms 10-Q, Richard Verdiramo also aided and abetted RECOV's violations of the reporting requirements of the federal securities laws.

9.     Despite causing RECOV to issue 6,100,000 restricted shares to himself, Richard Verdiramo never filed a Schedule 13D or Form 4 with the Commission regarding this issuance. By failing to make these required filings, Richard Verdiramo violated the disclosure provisions of the federal securities laws.

10.     By engaging in the acts alleged in this Complaint, Richard Verdiramo violated Section 5(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77e(a)], Sections 10(b), 13(b)(5), 13(d) and 16(a) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j(b), 78m(b)(5), 78m(d) and 78p(a)] and Rules 10b-5, 13b2-1, 13d-1, 13d-2 and 16a-3 thereunder [17 C.F.R. §§ 240.10b-5, 240.13b2-1, 240.13d-1, 240.13d-2(a) and 240.16a-3] and aided and abetted RECOV's violations of Section 13(a) of the Exchange Act [15 U.S.C. §

78m(a)] and Rules 13a-1 and 13a-13 thereunder [17 C.F.R. §§ 240.13a-1 and 240.13a-13].

Meyer also violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5

thereunder [17 C.F.R. § 240.10b-5], and Vincent L. Verdiramo aided and abetted his son's

violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder

[17 C.F.R. § 240.10b-5]. In addition, defendants Vincent L. Verdiramo, Meyer, and Chen

violated Section 5(a) of the Securities Act [15 U.S.C. § 77e(a)]. Unless enjoined from doing so,

the defendants are likely to commit the foregoing violations in the future.

11.　　Accordingly, the Commission is seeking an injunction against future violations of

the securities laws violated by each of the defendants. The Commission further seeks an

accounting and disgorgement of ill-gotten gains with prejudgment interest against all defendants,

civil money penalties against all defendants, a penny stock bar against all defendants, and an

officer and director bar as to Richard Verdiramo.

## JURISDICTION AND VENUE

12.　　This Court has jurisdiction over this action under Section 22(a) of the Securities

Act [15 U.S.C. § 77v(a)] and Sections 21(d), 21(e), 21A and 27 of the Exchange Act [15 U.S.C.

§§ 78u(d) and (e), 78u-1(a) and 78aa]. Defendants have made use, directly or indirectly, of the

means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national

securities exchange, in connection with the transactions, acts, practices, and courses of business

alleged in this Complaint.

13.　　Venue is appropriate in this District under Section 22(a) of the Securities Act [15

U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa], because certain of the

acts or transactions constituting the violations alleged herein occurred in this judicial district.

Among other acts and transactions, defendant Meyer and his nominees maintained brokerage

accounts in this judicial district through which Meyer sold unregistered shares of RECOV.

Unregistered shares of RECOV were also issued through the defendants' fraudulent scheme to an entity residing in this district. Venue is also appropriate in this District pursuant to 28 U.S.C. § 1391(d).

## DEFENDANTS

14.     **Richard Verdiramo**, 45, resides in New Jersey. Richard Verdiramo was the Chairman, CEO, President, and CFO of RECOV from 2000 to 2006. He is also a principal of Public Entity Acquisition Corporation, a private New Jersey corporation that shares offices with, among other private corporations, Verdiramo & Verdiramo, P.A. (his father's law firm). Richard Verdiramo is the son of Vincent L. Verdiramo.

15.     **Vincent L. Verdiramo, Esq.**, 72, resides in New Jersey. Vincent L. Verdiramo is an attorney licensed to practice law in the State of New Jersey and is a partner in the professional association of Verdiramo & Verdiramo, P.A., a law firm with offices in Jersey City, New Jersey. Vincent L. Verdiramo founded RECOV and served as its Chairman, CEO, and President, until he retired from the company on March 1, 2000. He served as counsel to RECOV on numerous matters. He is also a principal of Public Entity Acquisition Corporation, a private New Jersey corporation.

16.     **Edward Meyer, Jr.**, 63, resides in New Jersey. Meyer is the principal of Xcel Associates, a New Jersey corporation that purports to provide mergers and acquisitions consulting. Meyer was the subject of a previous Commission action due to his involvement in a 1996 scheme to pump and dump the stock of Interactive Multimedia Publishers, Inc. Meyer settled that action by consenting to a permanent injunction against violations of the anti-fraud, anti-touting, and registration provisions of the federal securities laws in May 2002. *See SEC v. Vertucci, et al.*, Litigation Release No. 17519, May 15, 2002.

17.    **Victoria Chen**, 42, resides in Vancouver, British Columbia. Chen is a Canadian citizen. Chen is also the principal of Greenwood Capital Holdings, Inc., a Nevada corporation. Chen worked with Meyer as a consultant on the potential merger between RECOV and a private company.

## FACTUAL ALLEGATIONS

### A.    Richard Verdiramo Directed RECOV to Issue Shares Pursuant to a Fraudulent Scheme and for Illicit Personal Gain

18.    In early 2005, RECOV was a shell company actively seeking private company merger candidates. Meyer, who had been hired as a consultant by a private company seeking to merge with a public shell, introduced Richard Verdiramo to the private company's president in February 2005 and began serving as an intermediary between the two in merger negotiations. The negotiations continued until August 2005, when they were terminated by the private company after Richard Verdiramo refused to cede sufficient control of RECOV and despite RECOV's issuance of two press releases announcing that the negotiations were in "the final stages" and expected to close within weeks.

19.    Unbeknownst to the private company, on February 8, 2005, Meyer and Chen, another consultant hired by Meyer to assist with the potential merger, entered into an agreement with Richard and Vincent L. Verdiramo to purchase a "controlling interest" in RECOV.

20.    On April 7, 2005, Richard Verdiramo signed a resolution of the RECOV Board of Directors authorizing RECOV's transfer agent to issue, purportedly under Section 4(2) of the Securities Act, "2,032,290 shares of free trading shares of the Company's Common Stock to the following individuals as repayment of the Company's debt pursuant to convertible loans payable" (the "April 7 Board Resolution"). The resolution also authorized the transfer agent to issue to Richard Verdiramo personally "6,100,000 shares of restricted common stock for services

rendered to the Company by its President." RECOV's Board was comprised at that time only of Richard Verdiramo and one other individual who did not sign the resolution.

21.     RECOV's transfer agent required an attorney opinion letter for any issuance of shares. To ensure that the transfer agent issued the shares authorized by the April 7 Board Resolution without a restrictive legend, Richard Verdiramo asked an attorney to write a Rule 144 opinion letter stating that the shares could be issued free trading. Richard Verdiramo told the attorney in an April 5, 2005 email, "We will begin converting these loans into shares on a going forward basis so the opinion letter needs to address the facts in a general manner and not be tied to the specifics, the who's and how much, of any one issuance." Richard Verdiramo did not tell the attorney the names of the people or entities who would be converting their debt, nor how long they had held their debt, but represented to the attorney that "[t]here have been a number of loans made to the company . . . from various individuals that total in excess of $432K. These loans were made from September of 1999 through October of 2003."

22.     The attorney refused to prepare a "standard" Rule 144 opinion letter stating that the shares could be issued without a restrictive legend because Richard Verdiramo did not provide him documents sufficient to justify a legal opinion that non-restricted securities could be issued. Indeed, the attorney specifically told Richard Verdiramo that he would not issue such an opinion. Instead, the attorney prepared a generic letter, dated April 7, 2005, that made no representations as to whether shares could be issued without a restrictive legend to specific individuals or entities. The attorney provided a copy of that letter to Richard Verdiramo, who sent it to the transfer agent in connection with this and subsequent share issuances discussed below.

23.     Vincent L. Verdiramo also provided an attorney opinion letter to RECOV's transfer agent in connection with the issuance of 6,100,000 restricted shares to Richard

Verdiramo as authorized in the April 7 Board Resolution. Vincent L. Verdiramo's letter, dated April 7, 2005, states that this issuance was a valid transfer of restricted shares, purportedly under Securities Act Section 4(2), and that he had reviewed the RECOV board resolution dated April 7, 2005 in arriving at his opinion.

24.     Pursuant to the April 7 Board Resolution and the opinion letters written by Vincent L. Verdiramo and the other attorney referenced above, on April 8, 2005, RECOV's transfer agent first issued 6,100,000 shares of restricted common stock of RECOV to Richard Verdiramo, increasing RECOV's issued and outstanding shares from 668,000 to 6,768,000 (an 813% increase). The transfer agent then issued 1,756,000 unrestricted shares of RECOV: 333,334 RECOV shares directly to Meyer; 150,000 shares to Meyer's daughter; 183,333 shares to Meyer's step-son; 333,333 shares to Greenwood Capital Holdings, Inc., a company Chen controlled; 126,000 shares to Public Entity Acquisition Corp., a company Richard Verdiramo and Vincent L. Verdiramo controlled; 300,000 shares to Illuminate International Corp., a company Vincent L. Verdiramo controlled; and 330,000 to Worldwide Connect, LLC, a company controlled by individuals with whom the Verdiramos had previously worked.

25.     As Richard and Vincent L. Verdiramo knew, or were reckless in not knowing, the April 7 Board Resolution's indications that the share issuances were being made as repayment of convertible debt were materially false and misleading because none of the individuals or entities to whom RECOV shares were issued without a restrictive legend on April 8, 2005 actually held notes payable of RECOV.

26.     Prior to the April 7 Board Resolution, Meyer had paid Richard and Vincent L. Verdiramo at least $175,000 for the RECOV shares pursuant to a February 8, 2005 contract signed by Richard Verdiramo (on behalf of "Selling Shareholders") and by Chen under which Meyer and Chen agreed to buy a "controlling interest" in RECOV for $825,000. The contract

did not specify when payment was due or the number of shares that Meyer and Chen would receive, but acknowledged receipt of $75,000 from the purchasers. The February 8, 2005 contract also states that the $75,000 already received by the Selling Shareholders was being held in a trust account at the law firm of Verdiramo & Verdiramo, P.A. and that the remaining funds owed under the contract must be also received into that account.

27.     A letter Richard Verdiramo sent to Chen on March 29, 2005, acknowledged receipt of an additional $100,000 from Meyer.

28.     Between May 6, 2005 and June 15, 2005, Meyer transmitted a further $175,000 in checks and wire transfers to the Verdiramo & Verdiramo, P.A. trust account, which, when added to previous payments, totaled $350,000. Most of these funds (at least $219,000) were paid out to the Verdiramos' Public Entity Acquisition Corporation. An additional $29,000 was paid to Vincent L. Verdiramo's law firm, Verdiramo & Verdiramo, P.A.

29.     On May 26, 2005, Richard Verdiramo signed another board resolution authorizing the transfer agent to issue 666,666 unrestricted RECOV shares to two entities controlled by New York-based stock promoters (the "May 26 Board Resolution"). As Richard Verdiramo knew, or recklessly disregarded, this board resolution also falsely claims that the issuances were made as repayment of convertible debt. As Richard Verdiramo knew, the stock promoters never held RECOV debt, nor did they ever lend money to RECOV. They received the shares as payment for stock promotion services they agreed to provide for RECOV. After receiving from Richard Verdiramo the May 26 Board Resolution and the April 7, 2005 opinion letter referenced above, the transfer agent issued these shares without a restrictive legend.

30.     On July 22, 2005, Richard Verdiramo signed another board resolution authorizing the transfer agent to issue an additional 624,829 unrestricted RECOV shares to Meyer's company, Xcel Associates (the "July 22 Board Resolution"). Richard Verdiramo again falsely

claimed in the board resolution that the shares were being issued as "repayment of the Company's debt pursuant to convertible notes payable." However, as Richard Verdiramo knew, neither Meyer nor Xcel Associates ever held RECOV convertible debt. After receiving from Richard Verdiramo the July 22 Board Resolution and the April 7, 2005 opinion letter referenced above, the transfer agent issued these shares without a restrictive legend.

31.    No registration statement was on file with the Commission or in effect for any transaction in RECOV stock during the time period of these share issuances.

32.    During the time period of these share issuances, RECOV's securities qualified as a "penny stock" because they did not meet any of the exceptions from the definition of a "penny stock," as defined by Section 3(a)(51) of the Exchange Act and Rule 3a51-1 thereunder. RECOV's securities were equity securities (1) that were not reported securities or an "NMS stock," as defined in 17 CFR 242.600(b)(47); (2) that traded below five dollars per share during the relevant period; (3) whose issuer had net tangible assets and average revenue below the thresholds of Rule 3a51-1(g)(1); and (4) did not meet any of the other exceptions from the definition of a "penny stock" contained in Rule 3a51-1 under the Exchange Act.

33.    By preparing and signing these false board resolutions, Richard Verdiramo violated the anti-fraud and the books and records provisions of the federal securities laws, and aided and abetted RECOV's violations of the books and records provisions.

34.    When asked about the above allegations during the Commission's investigation in this matter, Richard Verdiramo asserted his Fifth Amendment privilege against self incrimination and refused to testify.

**B.    Vincent L. Verdiramo Aided and Abetted the Fraudulent Scheme**

35.    Vincent L. Verdiramo aided and abetted Richard Verdiramo's scheme to fraudulently issue RECOV shares and misappropriate the proceeds from the issuances for Richard Verdiramo's own benefit. Vincent L. Verdiramo participated in the negotiations with Meyer over the sale of a controlling interest in RECOV and was an unnamed party (a "Selling Shareholder") to the February 8, 2005 contract. In a March 31, 2005 facsimile from Vincent L. Verdiramo to Meyer, which informed Meyer of a competing offer for a controlling interest in RECOV by a third party for more money, Vincent L. Verdiramo made clear that he was a party to the February 8, 2005 contract by stating, "Ed – Our deal is 875 – please send this and if it OK – fine – if not I'd be willing to return most of your money and go forward – Vinnie."

36.    Vincent L. Verdiramo knew that Richard Verdiramo, through RECOV, was fraudulently issuing shares for illicit personal gain. Vincent L. Verdiramo knew that Meyer and others, including entities Vincent L. Verdiramo and his son controlled, were being issued 1,756,000 shares of RECOV without a restrictive legend purportedly for repayment of RECOV notes payable because Vincent L. Verdiramo reviewed the April 7 Board Resolution for purposes of issuing the attorney opinion letter related to the 6,100,000 restricted shares issued to Richard Verdiramo. Vincent L. Verdiramo sent RECOV's transfer agent the attorney opinion letter dated April 7, 2005 stating that this issuance was a valid transfer of restricted shares, purportedly under Securities Act Section 4(2), and that he had reviewed the RECOV board resolution dated April 7, 2005 in arriving at his opinion.

37.    Vincent L. Verdiramo knew that the April 7 Board Resolution contained false or misleading statements because he knew, at a minimum, that entities he controlled – Illuminate and Public Entity Acquisition Corporation – were not RECOV debt holders. Vincent L. Verdiramo also knew that Meyer did not hold RECOV notes payable at the time of the issuance

because Vincent L. Verdiramo specifically explained to Meyer, when Meyer asked how the issuance could be justified, that RECOV could legally issue Meyer the shares without a restrictive legend because RECOV "had debt on the books" that was over two years old.

38.    Vincent L. Verdiramo also aided and abetted the fraudulent scheme by using his attorney trust account to receive monies from Meyer, Meyer's nominees, and others that should have gone to RECOV, and, instead, funneling the money out of the trust account into a bank account held by Public Entity Acquisition Corporation, a private entity which Vincent and Richard Verdiramo controlled, and paying money out of the trust account directly to his law firm.

39.    When asked about the above allegations during the Commission's investigation in this matter, Vincent L. Verdiramo asserted his Fifth Amendment privilege against self incrimination and refused to testify.

**C.    Additional Unregistered, Non-Exempt Sales of RECOV Stock by Meyer, Chen and Vincent L. Verdiramo**

40.    In addition to the unregistered, non-exempt sales of RECOV shares Richard Verdiramo directed to Meyer and Chen as described above at paragraphs 18 to 36, Meyer, Chen, and Vincent L. Verdiramo all sold the RECOV shares issued to them or to the entities they controlled in unregistered, non-exempt transactions in violation of the registration provisions of the federal securities laws.

41.    Between April 8, 2005 – when Meyer, his daughter and his step-son, combined, received 666,667 shares of RECOV pursuant to the April 7 Board Resolution – and November 2005, Meyer sold 607,500 shares of RECOV through his individual brokerage accounts and those of his corporate alter-ego Xcel Associates, for proceeds of nearly $265,000. Some of those shares had been transferred to Meyer from Meyer's daughter and step-son.

42.     Between April 8, 2005 – when Chen's company Greenwood Capital received 333,333 shares of RECOV – and the end of 2005, Chen sold 158,333 shares of RECOV for proceeds of over $40,000. Chen transferred the remainder of her shares to other individuals.

43.     Between April 8, 2005 – when Vincent L. Verdiramo's company Illuminate received 300,000 shares of RECOV pursuant to the April 7 Board Resolution – and July 2007, Vincent L. Verdiramo sold 657,111 shares of RECOV, many transferred into his brokerage accounts from other companies he controlled, for proceeds of more than $280,000.

44.     No registration statement was on file with the Commission or in effect for any transaction in RECOV stock during the time period of these sales.

**D.    Meyer Sold Shares on the Basis of Material, Non-Public Information**

45.     Meyer violated the insider trading provisions of the federal securities laws by selling RECOV shares on the basis of material, non-public information. RECOV's stock price dropped 30% when the information on which Meyer traded became public. Meyer misappropriated and traded on the basis of confidential information he acquired through his position as a consultant on the potential merger between RECOV and Carbon Recovery Corporation ("CRC"), a private company working to develop a technology that could potentially convert used tires to useable oil, despite a confidentiality clause in his consulting agreement with CRC.

46.     CRC hired Meyer in October 2004 to help it become a public company and paid him a $50,000 consultancy fee for his services. The consulting agreement between CRC and Xcel Associates, Inc., Meyer's corporate alter-ego, imposed a duty of confidentiality on Xcel and its consultants, employees, officers, and directors, preventing them from disclosing "knowledge or information concerning the confidential affairs of CRC with respect to CRC's business or finances that was obtained in the course of performing services provided for herein." Meyer

signed the consulting agreement on behalf of Xcel Associates, Inc.

47.    In early 2005, Meyer identified RECOV as a shell company with which CRC could effect a reverse merger. In February 2005, Meyer introduced CRC's president to Richard Verdiramo and began serving as the intermediary between the two in merger negotiations.

48.    CRC's merger negotiations with RECOV continued through the spring and into the summer of 2005, when CRC's president began to doubt that the merger would occur because Richard Verdiramo appeared unwilling to cede sufficient control of RECOV. Nevertheless, Meyer, who was the go-between in the negotiations between CRC's president and Richard Verdiramo, repeatedly assured CRC's president throughout the summer of 2005 that the merger would indeed occur.

49.    On June 22, 2005, RECOV issued a press release regarding its merger negotiations with CRC, announcing that it expected the acquisition of CRC to close "during the first two weeks of July." Though CRC's president was skeptical of this claim given the lack of progress in the negotiations, he approved the issuance of the release based on Meyer's representations that the merger would occur. The news boosted the volume of trading in RECOV shares, which remained significantly higher than normal over the next five weeks.

50.    In late July 2005, Richard Verdiramo suddenly reneged on many items previously negotiated with CRC. At that point, CRC's president concluded that an agreement would not be reached between CRC and RECOV. CRC's president then drafted a press release dated Friday, July 29, 2005, announcing the suspension of the merger negotiations. CRC's president (who was unaware of Meyer's prior relationship with Richard Verdiramo, Meyer's contract to buy a controlling interest in RECOV, and Meyer's trading in RECOV stock) faxed the draft to Meyer that day and told him that CRC was going to issue the release on the following Monday, August 1, 2005.

51.    Meyer asked CRC's president not to issue the release. Meyer reiterated his assurances that CRC and RECOV would indeed merge. Meyer also told CRC's president that Richard Verdiramo had become more flexible in their negotiations. Despite his skepticism, CRC's president agreed to delay issuing the release.

52.    Within about two weeks, however, it became apparent to CRC's president that Richard Verdiramo was unwilling to cede sufficient control of RECOV to CRC. On August 15, 2005, CRC issued a press release on its website announcing the suspension of merger negotiations with RECOV. On August 16, 2005, RECOV issued its own press release through the PR Newswire announcing that its negotiations with CRC had reached an impasse and that the acquisition would not close. On the day following RECOV's announcement, its stock price dropped about 30 percent, from 39 cents per share to 28 cents per share.

53.    Between July 29, 2005, and August 16, 2005, when he knew that the merger negotiations between RECOV and CRC were on the verge of collapse, Meyer, in breach of a fiduciary or similar relationship of trust and confidence he owed to CRC and its president, misappropriated that information and sold nearly 100,000 shares of RECOV for proceeds of more than $40,000. By doing so, he avoided losses of about $14,000.

54.    When asked about his August 2005 sales during the Commission's investigation in this matter, Meyer asserted his Fifth Amendment privilege against self incrimination and refused to testify.

**E.    Richard Verdiramo Made Materially False and Misleading Statements in RECOV's Filings with the Commission**

55.    RECOV's first disclosure regarding its issuance of purportedly non-restricted

securities issued in connection with the repayment of notes payable occurred on October 4, 2005,

when RECOV filed its second amended Form 10-KSB for the fiscal year ended March 31, 2005.

This filing states:

> During the period ended June 30, 2005, the Company issued 2,422,666 shares of
> free trading common stock, in conversion of $44,819 of convertible notes
> payable. ... The Company received an opinion from counsel that the shares
> issued in these transactions were free trading.

Both statements were untrue. As Richard Verdiramo knew, or was reckless in not knowing,

none of the share recipients ever held RECOV convertible debt payable or any other RECOV

debt and none of the three documented RECOV debt holders received RECOV shares in these

issuances. Also, none of the documented debt holders ever assigned their interests to any of the

share recipients.

56.    Also, as Richard Verdiramo knew, or was reckless in not knowing, the April 7,

2005 opinion letter never opined that RECOV shares could be issued without a restrictive

legend. Indeed, the attorney who wrote the opinion letter specifically told Richard Verdiramo

that he would not opine that the shares could be issued without a restrictive legend.

57.    RECOV also disclosed in the October 4, 2005 filing that it had issued 6,100,000

shares to Richard Verdiramo "for services *to be* rendered for the period from April 1, 2005

through March 31, 2006," (emphasis added), but had rescinded that issuance because "Delaware

law does not allow shares to be issued in futuro which was the case in this issuance." However,

as Richard Verdiramo knew, or was reckless in not knowing, this statement was materially false

and misleading because the 6,100,000 shares were originally issued to Richard Verdiramo

pursuant to the April 7, 2005 board resolution for "services rendered." Richard Verdiramo returned those shares to the transfer agent for cancellation on September 26, 2005.

58.    RECOV made identical false disclosures in its Forms 10-QSB for fiscal 2005 quarters ended June 30, 2005 (filed on October 4, 2005) and September 30, 2005 (filed on November 17, 2005). Richard Verdiramo was the only signatory on these quarterly and annual filings and was RECOV's Chairman, CEO, CFO and President at that time. He also certified the filings as required by the Sarbanes-Oxley Act.

59.    These false statements also constitute violations by RECOV of the reporting provisions of the federal securities laws, which Richard Verdiramo aided and abetted since he was the individual responsible for RECOV's filing of the false disclosures.

60.    When asked about the above allegations during the Commission's investigation in this matter, Richard Verdiramo asserted his Fifth Amendment privilege against self incrimination and refused to testify.

**F.    Richard Verdiramo Failed to Make Required Filings About His RECOV Holdings with the Commission**

61.    Richard Verdiramo violated the disclosure provisions of the federal securities laws by failing to file a Schedule 13D within ten days of his acquisition of 6,100,000 shares of RECOV in April 2005. Prior to the issuance of these shares, Richard Verdiramo owned less than eight percent of RECOV's outstanding shares. After the April 8, 2005 issuances to Richard Verdiramo and others, he owned more than 70% of RECOV's outstanding shares. His failure to file a Schedule 13D concealed his seizure of control over RECOV and a major increase in the company's outstanding shares

62.    Richard Verdiramo also violated reporting provisions of the federal securities laws by failing to timely file a Form 4 to report his change in beneficial ownership of RECOV shares, which he was required to file as an officer and director of the company. Richard

Verdiramo should have filed a Form 4 reporting his acquisition of 6,100,000 shares of RECOV

by mid-May 2005. Instead, he did not file a Form 4 until January 2006, after he had already

returned the shares to the transfer agent for cancellation.

## FIRST CLAIM FOR RELIEF

*(Violations of Section 5(a) of the Securities Act
by Defendants Richard Verdiramo, Vincent L. Verdiramo, Meyer and Chen)*

63.     The Commission realleges and incorporates by reference Paragraphs 1 through 62

above.

64.     By engaging in the conduct described above, including engaging in unregistered

distributions of RECOV stock, Richard Verdiramo, Vincent L. Verdiramo, Meyer and Chen,

directly or indirectly, made use of means or instruments of transportation or communication in

interstate commerce or of the mails, to offer to sell or to sell securities, or to carry or cause such

securities to be carried through the mails or in interstate commerce for the purpose of sale or for

delivery after sale.

65.     No registration statement has been filed with the Commission or has been in

effect with respect to any of the sales alleged above.

66.     By reason of the foregoing, Richard Verdiramo, Vincent L. Verdiramo, Meyer

and Chen violated, and unless restrained and enjoined will to continue to violate, Section 5(a) of

the Securities Act [15 U.S.C. § 77e(a)].

## SECOND CLAIM FOR RELIEF

*(Violations of Section 10(b) of the Exchange Act and Rule 10b-5
Thereunder by Defendant Richard Verdiramo)*

67.     The Commission realleges and incorporates by reference Paragraphs 1 through 62

above.

68.     By engaging in the conduct described above, including causing RECOV to issue

shares for his and his father's personal benefit using a fraudulent scheme and by making

materially false and misleading statements in filings made with the Commission, Richard

Verdiramo, directly or indirectly, in connection with the purchase or sale of securities, by the use

of means or instrumentalities of interstate commerce, or the mails, with scienter: (a) employed

devices, schemes, or artifices to defraud; (b) made untrue statements of material facts or omitted

to state material facts necessary in order to make the statements made, in the light of the

circumstances under which they were made, not misleading; and (c) engaged in acts, practices,

or courses of business which operated or would operate as a fraud or deceit upon other persons,

including purchasers and sellers of securities.

69.    By reason of the foregoing, Richard Verdiramo has violated, and unless restrained

and enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and

Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### THIRD CLAIM FOR RELIEF

*(Aiding and Abetting Violations of Section 10(b) of the Exchange Act and Rule 10b-5*
*Thereunder by Defendant Vincent L. Verdiramo)*

70.    The Commission realleges and incorporates by reference Paragraphs 1 through 62
above.

71.    By engaging in the conduct described above, including participating in

negotiations with Meyer, being a party to the sale and issuance of RECOV shares and using his

attorney trust account to funnel the money paid by Meyer and others for RECOV shares to a

private company controlled by Richard and Vincent L. Verdiramo for their personal use, Vincent

L. Verdiramo knowingly provided substantial assistance to Richard Verdiramo's violations of

Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §

240.10b-5].

72.    By reason of the foregoing, Vincent L. Verdiramo aided and abetted violations of

Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §

240.10b-5], and unless restrained and enjoined, will continue to aid and abet such violations.

## FOURTH CLAIM FOR RELIEF

*(Violations of Section 10(b) of the Exchange Act and Rule 10b-5*
*Thereunder by Defendant Edward Meyer)*

73.     The Commission realleges and incorporates by reference Paragraphs 1 through 62 above.

74.     By engaging in the conduct described above, including selling shares of RECOV while in possession of material, non-public information, Meyer, directly or indirectly, in connection with the purchase or sale of securities, by the use of means or instrumentalities of interstate commerce, or the mails, with scienter: (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons, including purchasers and sellers of securities.

75.     By reason of the foregoing, Meyer has violated, and unless restrained and enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## FIFTH CLAIM FOR RELIEF

*(False Periodic Reports – Violations of, and Aiding and Abetting Violations of,*
*Section 13(a) of the Exchange Act and Exchange Act Rules 13a-1 and 13a-13*
*by Defendant Richard Verdiramo)*

76.     The Commission realleges and incorporates by reference Paragraphs 1 through 62 above.

77.     Based on the allegations above, including making false and misleading statements in Annual and Current Reports filed with the Commission as alleged in paragraphs 52 to 57 above, RECOV violated Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 13a-

1 and 13a-13 thereunder [17 C.F.R. §§ 240.13a-1, and 240.13a-13], which obligate issuers of

securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] to file with the

Commission accurate annual and current reports.

78.    Based on the conduct described above, Richard Verdiramo knowingly provided

substantial assistance to RECOV's filing of materially false and misleading reports with the

Commission.

79.    By reason of the foregoing, Richard Verdiramo aided and abetted violations by

RECOV of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 13a-1, and 13a-13

thereunder [17 C.F.R. §§ 240.13a-1, and 240.13a-13]. Unless restrained and enjoined, Richard

Verdiramo will continue to aid and abet such violations.

### SIXTH CLAIM FOR RELIEF

*(Falsifying Books and Records – Violations of Section 13(b)(5) of the Exchange Act
and Exchange Act Rule 13b2-1 Thereunder by Defendant Richard Verdiramo)*

80.    The Commission realleges and incorporates by reference Paragraphs 1 through 62
above.

81.    By engaging in the conduct described above, including drafting and signing the

board resolutions issued by the Company in 2005 that falsely stated that RECOV was issuing

shares in repayment of convertible debt, Richard Verdiramo knowingly falsified certain books,

records, and accounts.

82.    By reason of the foregoing, Richard Verdiramo violated, and unless restrained

and enjoined will continue to violate, Section 13(b)(5) of the Exchange Act [15 U.S.C. §

78m(b)(5)] and Exchange Act Rule 13b2-1 thereunder [17 C.F.R. § 240.13b2-1], which prohibit

an individual from knowingly falsifying a company's books, records or accounts.

## SEVENTH CLAIM FOR RELIEF

*(Beneficial Ownership Reporting – Violations of Section 13(d) of the Exchange Act and Exchange Act Rules 13d-1 and 13d-2 Thereunder by Defendant Richard Verdiramo)*

83.    The Commission realleges and incorporates by reference Paragraphs 1 through 62 above.

84.    By engaging in the conduct described above, including failing to file a Schedule 13D upon the receipt of 6,100,000 shares of RECOV stock in 2005, Richard Verdiramo violated Section 13(d) of the Exchange Act [15 U.S.C. § 78m(d)] and Rules 13d-1 and 13d-2 thereunder [17 C.F.R. §§ 240.13d-1 and 240.13d-2], which require any person who, directly or indirectly, acquires the beneficial ownership of more than five percent of any equity security of a class which is registered pursuant to Exchange Act Section 12 to file a Schedule 13D within 10 days, and to file an amendment promptly if any material change occurs.

85.    By reason of the foregoing, Richard Verdiramo violated, and unless restrained and enjoined will continue to violate, Section 13(d) of the Exchange Act [15 U.S.C. § 78m(d)] and Rules 13d-1 and 13d-2 thereunder [17 C.F.R. §§ 240.13d-1 and 240.13d-2(a)].

## EIGHTH CLAIM FOR RELIEF

*(Beneficial Ownership Reporting - Violations of Section 16(a) of the Exchange Act and Rule 16a-3 Thereunder by Defendant Richard Verdiramo)*

86.    The Commission realleges and incorporates by reference Paragraphs 1 through 62 above.

87.    By engaging in the conduct described above, including not reporting, or failing to report in a timely manner, his acquisition of 6,100,000 shares of RECOV stock, Richard Verdiramo violated Section 16(a) of the Exchange Act [15 U.S.C. § 78p(a)] and Rule 16a-3 thereunder [17 C.F.R. § 240.16a-3], which require officers, directors and beneficial owners of more than ten percent of any class of equity security registered pursuant to Exchange Act Section 12 [15 U.S.C § 78l] to file periodic reports disclosing any change of beneficial ownership of those securities.

88.    By reason of the foregoing, Richard Verdiramo violated and, unless restrained and enjoined, will continue to violate, Section 16(a) of the Exchange Act [15 U.S.C. § 78p(a)] and Rule 16a-3 [17 C.F.R. § 240.16a-3] thereunder.

## RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court:

(A)    Find that Defendants Richard Verdiramo, Vincent L. Verdiramo, Edward Meyer, Jr., and Victoria Chen committed the violations alleged;

(B)    Permanently enjoin Richard Verdiramo from directly or indirectly violating Section 5(a) of the Securities Act [15 U.S.C. § 77e(a)] and Sections 10(b), 13(b)(5), 13(d), and 16(a) of the Exchange Act  [15 U.S.C. §§ 78j(b), 78m(b)(5), 78m(d), and 78p(a)], and Rules 10b-5, 13b2-1, 13d-1, 13d-2, and 16a-3 thereunder [17 C.F.R. §§ 240.10b-5, 240.13b2-1, 240.13d-1, 240.13d-2, and 240.16a-3] and from aiding and abetting violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 13a-1 and 13a-13 thereunder [17 C.F.R. §§ 240.13a-1, and 240.13a-13];

(C)    Permanently enjoin Vincent L. Verdiramo from directly or indirectly violating Section 5(a) of the Securities Act [15 U.S.C. § 77e(a)] and from directly or indirectly violating or aiding and abetting violations of Section 10(b) of the Exchange Act  [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

(D)    Permanently enjoin Meyer from directly or indirectly violating Section 5(a) of the Securities Act [15 U.S.C. § 77e(a)] and Section 10(b) of the Exchange Act  [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

(E)    Permanently enjoin Chen from directly or indirectly violating Section 5(a) of the Securities Act [15 U.S.C. § 77e(a)];

(F)    Order defendants Richard Verdiramo, Vincent L. Verdiramo, Meyer and Chen to prepare a sworn accounting of the purpose, disposition, and present location of all the money they obtained from sales of RECOV shares during the period February 2005 through August 2005;

(G)    Order Richard Verdiramo, Vincent L. Verdiramo, Meyer and Chen to pay civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)];

(H)    Order Meyer to pay civil penalties pursuant to Section 21A(a) of the Exchange Act [15 U.S.C. § 78u-1(a)];

(I)    Order Richard Verdiramo, Vincent L. Verdiramo, Meyer and Chen to disgorge any ill-gotten gains, including prejudgment interest;

(J)    Bar Richard Verdiramo, pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], from serving as an officer or director of any entity having a class of securities registered with the Commission pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)];

(K)    Bar defendants Richard Verdiramo, Vincent L. Verdiramo, Meyer and Chen from any future participation in the offering of any penny stock, as defined by Section 3(a)(51)(A) of the Exchange Act [15 U.S.C. § 78c(a)(51)] and Rule 3a51-1 [17 C.F.R. § 240.3a51-1] thereunder, including engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading or inducing or attempting to induce the purchase or sale of any penny stock, pursuant to Section 20(g) of the Securities Act [15 U.S.C. § 77t(g)] and Section 21(d)(6) of the Exchange Act [15 U.S.C. § 78u(d)(6)] and the Court's equitable powers;

(L)     Retain jurisdiction of this action in accordance with the principles of equity and

the Federal Rules of Civil Procedure in order to implement and carry out the terms of all

orders and decrees that may be entered, or to entertain any suitable application or motion for

additional relief within the jurisdiction of this Court; and

(M)     Grant such other and further relief as this Court deems just and proper.

Dated: March 9, 2010                     Respectfully Submitted,


Dean M. Conway (Lead Counsel)
        *Assistant Chief Litigation Counsel*
Mark Adler, MA-8703
        *Deputy Chief Litigation Counsel*
U.S. Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549-4010
Telephone: (202) 551-4412 (Conway)
Facsimile: (202) 772-9246 (Conway)
conwayd@sec.gov

Counsel for Plaintiff

Of Counsel:
Christopher R. Conte, *Associate Director,*
        *Division of Enforcement*
Timothy N. England, *Assistant Director,*
        *Division of Enforcement*
Rami Sibay, *Branch Chief,*
        *Division of Enforcement*
Beth Collier Groves, *Senior Counsel,*
        *Division of Enforcement*