**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
UNITED STATES SECURITIES AND     :
EXCHANGE COMMISSION,     :
     :
         Plaintiff,     :
     :
     :     10 Civ. 1888 (RMB)
   - against -     :
     :     **<u>DECISION & ORDER</u>**
     :
RICHARD VERDIRAMO, VINCENT L.     :
VERDIRAMO, ESQ., EDWARD MEYER, JR.,     :
and VICTORIA CHEN,     :
     :
         Defendants.     :
-------------------------------------------------------------X

**I.**    **Introduction**

On March 10, 2010, the United States Securities and Exchange Commission ("SEC")

filed a complaint ("Complaint") against Vincent L. Verdiramo, Esq., an attorney licensed to

practice law in the State of New Jersey and a partner in Verdiramo & Verdiramo P.A.;

Richard Verdiramo, former Chairman, Chief Executive Officer, President, and Chief

Financial Officer of RECOV Energy Corporation ("RECOV"); Edward Meyer, Jr.

("Meyer"), Principal of Xcel Associates, a New Jersey corporation; and Victoria Chen

("Chen"), Principal of Greenwood Capital Holdings, Inc., a Nevada corporation (collectively,

"Defendants").  (Compl., dated Mar. 9, 2011, ¶¶ 14–17.)  The SEC alleges, among other

things, that Defendants sold shares of RECOV "in unregistered, non-exempt transactions" in

violation of Section 5 of the Securities Act of 1933, 15 U.S.C. § 77e(a) ("Securities Act").

The SEC further alleges that Defendants violated Sections 10(b) and 13(b)(5) of the

Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78m(b)(5) ("Exchange Act"), and

Rules 10b-5 and 13b2-1 promulgated thereunder, 17 C.F.R. §§ 240.10b-5, 240.13b2-1; and

that Richard Verdiramo violated Sections 13(a), 13(d), and 16(a) of the Exchange Act, 15

U.S.C. §§ 78m(a), 78m(d), 78p(a), and Rules 13a-1, 13a-13, 13d-1, 13d-2, and 16a-3

promulgated thereunder, 17 C.F.R. §§ 240.13a-1, 240.13a-13, 240.13d-1, 240.13d-2(a),

240.16a-3.  (Compl. ¶¶ 1, 10.)[1]

On December 23, 2010, the SEC moved for partial summary judgment, pursuant to

Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), with respect to the

Section 5, Section 13(d), and Section 16(a) claims.[2]  The SEC argues, among other things,

that (1) Vincent Verdiramo and Chen "directly," and Richard Verdiramo "indirectly," sold

"hundreds of thousands" of RECOV shares in unlawful unregistered transactions, in violation

of Section 5; and (2) Richard Verdiramo violated Sections 13(d) and 16(a) by failing to

report to the SEC his acquisition of 6.1 million shares of RECOV stock and the change in his

beneficial ownership of RECOV.  (SEC Mem. at 6–9.)  The SEC seeks permanently to enjoin

Vincent Verdiramo, Richard Verdiramo, and Chen from future violations of Section 5 and

permanently to enjoin Richard Verdiramo from future violations of Sections 13(d) and 16(a).

It also seeks disgorgement of Vincent Verdiramo, Richard Verdiramo, and Chen's "ill-gotten

gains."  (SEC's Mem. in Supp. of Mot. for Partial Summ. J., dated Dec. 23, 2010 ("SEC

Mem."), at 9; Compl. ¶ 9.)

On April 11, 2011, Vincent and Richard Verdiramo filed an opposition arguing,

among other things, that (1) Vincent and Richard Verdiramo did not violate Section 5

---

[1]     On April 7, 2011, Meyer and the SEC entered into a settlement agreement
permanently enjoining Meyer from violations of Section 5 of the Securities Act and Section
10(b) of the Exchange Act; ordering Meyer to pay disgorgement in the amount of $62,050;
and dismissing Meyer from this action.  (See Consent of Meyer, dated Apr. 7, 2011, ¶ 2;
Final J. as to Meyer, dated June 27, 2011.)

[2]     The SEC did not move for summary judgment with respect to its claims for violations
of Sections 10(b), 13(a), or 13(b)(5).

because Vincent Verdiramo's sales of RECOV shares – in which the SEC alleges Richard

Verdiramo was "indirectly" involved – fell within the "safe harbor" provisions of Rule

144(k), 17 C.F.R. § 230.144(k); and (2) Richard Verdiramo did not violate Sections 13(d)

and 16(a) because his acquisition of 6.1 million RECOV shares did not change his beneficial

ownership of RECOV but occurred "solely to [pass] control of RECOV [to Carbon Recovery

Corp ('CRC')] if a merger [between RECOV and CRC] took place."  (Mem. of Defs.

Vincent Verdiramo and Richard Verdiramo in Opp'n to SEC Mot. for Partial Summ. J., dated

Apr. 11, 2011 ("Defs. Mem."), at 15, 17–18.)  Vincent and Richard Verdiramo also argue

that there are no grounds for any equitable relief against them because, among other reasons,

"partial summary judgment on the SEC's substantive claims is unwarranted."  (Defs. Mem.

at 18.)  They include in their opposition the purported expert report of attorney Robert D.

Axelrod, dated December 22, 2010 ("Axelrod Report").[3]

Chen, who is proceeding <u>pro se</u>, has not submitted an opposition to the SEC's motion

for partial summary judgment.  Chen initially appeared in this matter through her counsel,

Gregory Bartko ("Bartko").  (<u>See</u> Order for Admission <u>Pro Hac Vice</u> of Gregory Bartko,

Esq., dated June 1, 2010 [#16].)  At a status conference on January 6, 2011, the Court was

advised that Bartko had been suspended from the practice of law because he "had been

convicted" of various crimes, including the unlawful sale of unregistered securities in

violation of Section 5 of the Securities Act, in the United States District Court for the Eastern

District of North Carolina.  (<u>See</u> Tr. of Proceedings, dated Jan. 6, 2011, at 2:19-20; Tr. of

---

[3]     Axelrod received a Juris Doctor from the University of Houston in 1973 and is
admitted to practice law in the State of Texas.  (<u>See</u> Axelrod Report, Ex. A.)  He was
"employed by the Securities and Exchange Commission as a staff attorney from 1973–1976
and thereafter ha[s] been in the private practice of law," with his "primary area of expertise
[in] securities regulation."  (Axelrod Report at 1, 4 & Ex A.)

Proceedings, dated Feb. 24, 2011); see also United States v. Bartko, No. 09 Crim. 321

(E.D.N.C.)

On May 9, 2011, the SEC filed a reply arguing, among other things, that Vincent

Verdiramo's unregistered transactions did not qualify for safe harbor treatment under Rule

144(k) – which allows "a person who is not an affiliate of the issuer" to sell shares in

unregistered transactions provided that the seller (together with any prior holder of shares

with whom the seller can "tack" under Rule 144(d)(3)(ii)) has held those shares for "at least

two years."  (SEC Reply Mem. in Supp. of Mot. for Partial Summ. J., dated May 9, 2011

("SEC Reply"), at 4–8); 17 C.F.R. § 230.144(d), (k).  First, Vincent Verdiramo could not

satisfy Rule 144(k)'s two-year holding requirement because he personally held the shares for

less than one year, and because the person whose holding period Vincent Verdiramo sought

to "tack" onto "never sold or gave her shares to V[incent] Verdiramo," thereby "end[ing] any

'tacking' claim."  (SEC Reply at 4–8.)  Second, Vincent Verdiramo was an affiliate of

RECOV at the time he engaged in the unregistered sales of RECOV shares, and "an affiliate

cannot . . . cannot rely on Rule 144(k)."  (SEC Reply at 8.)  The SEC also argues that the

Axelrod Report "should . . . be excluded or disregarded as impermissible expert opinion on

the law."  (SEC Reply at 6; see also SEC's Mem. of Law in Supp. of Mot. in Limine to

Exclude Axelrod Report, dated May 9, 2011 ("SEC Expert Mem."), at 1 ("The Axelrod

Report is the quintessential legal argument by an attorney in the guise of 'expert' opinion,"

and "fails other tests of reliability and relevance under the Federal Rules of Evidence.").)

The parties waived oral argument.  (See Tr. of Proceedings, dated Nov. 15, 2010.)

**For the reasons set forth below, the SEC's motion for partial summary**

**judgment is granted.**

II.     **Background**

The following facts are not in dispute:

(i) at all relevant times, RECOV (formerly Interactive Multimedia Network, Inc.

("IMNI")) was a "reporting company" under Section 12 of the Exchange Act, 15 U.S.C.

§ 78l.[4]  As a reporting company, RECOV was required to file with the SEC reports

disclosing the "acquisition or disposition of shares equal to or greater than one percent

of . . . total outstanding stock" and "changes in [the beneficial] ownership" of the company

(SEC Statement of Material Facts, dated Dec. 23, 2010 ("SEC 56.1"), ¶ 29; SEC Mem. at 8–

9; Counter-Statement Pursuant to Local Civil R. 56.1 of Defs. in Opp'n to SEC Mot. for

Partial Summ. J., dated Apr. 11, 2011 ("Defs. 56.1") ¶ 29);

(ii) RECOV was founded in March 1994 by Vincent Verdiramo, who served as its

Chairman, Chief Executive Officer, and President until March 1, 2000.  Since March 2000,

Vincent Verdiramo has served "as counsel for RECOV on numerous matters" (SEC 56.1

¶¶ 8, 9; Defs. 56.1 ¶¶ 8, 9);

(iii) in addition to his role as counsel, in December 2004 and January 2005, Vincent

Verdiramo had "discussions" with Meyer which "result[ed]" in Meyer "agree[ing] to

purchase control of [RECOV] for $825,000."   As of March 31, 2005, Vincent Verdiramo

also held $255,935 in RECOV debt, constituting 64% of RECOV's total outstanding notes

and 42% of RECOV's outstanding liabilities.  And, between 1999 and 2005, Vincent

Verdiramo also repaid $140,000 of RECOV's corporate debt out of his own assets (Decl. of

Vincent L. Verdiramo in Opp'n to Pl.'s Mot. for Partial Summ. J., dated Apr. 11, 2011

---

[4]      IMNI changed its name to RECOV in 2005.  (Decl. of Def. Richard Verdiramo in
Opp'n to Pl.'s Mot. for Partial Summ. J., dated Apr. 11, 2011 ("Richard Verdiramo Decl."),
¶¶ 7, 39.)

("Vincent Verdiramo Decl."), ¶ 13–14; Richard Verdiramo Decl. ¶ 28; Ex. 21R to Decl. of

Dean M. Conway in Supp. of SEC's Mot. for Partial Summ. J., dated Dec. 23, 2010

("Conway Decl."));

(iv) as of March 31, 2005, Vincent Verdiramo's wife, Marion Verdiramo, owned 3.4

million shares of RECOV common stock, making her the largest single holder of RECOV

shares at the time (Richard Verdiramo Decl. ¶ 38);

(v) at all relevant times, RECOV "share[d office] space" with Vincent Verdiramo's

law firm, Verdiramo & Verdiramo P.A., which had "agreed not to charge rent [to RECOV]

and [wa]s not expecting payment from [RECOV] for the office use" (Conway Decl. Ex. 21R,

at 5);

(vi) between 2000 and 2006, Richard Verdiramo, who is Vincent Verdiramo's son,

served as the Chairman, Chief Executive Officer, President, and Chief Financial Officer of

RECOV (see SEC 56.1 ¶ 1; Defs. 56.1 ¶ 1);

(vii) prior to April 7, 2005, Richard Verdiramo "owned, directly or indirectly, greater

than five percent of outstanding RECOV common stock" (SEC 56.1 ¶ 26; Defs. 56.1 ¶ 26;

Richard Verdiramo Decl. ¶ 38; Conway Decl. Ex. 21R);

(viii) on April 7, 2005, Richard Verdiramo, in his capacity as President, signed a

resolution on behalf of the RECOV Board of Directors ("April 7, 2005 Resolution")

authorizing RECOV's transfer agent, Jersey Transfer and Trust ("Transfer Agent"), to issue

"2,032,290 . . . free trading shares of [RECOV] [c]ommon [s]tock to [certain] individuals."

The April 7, 2005 Resolution also authorized the Transfer Agent to issue "6,100,000 shares

of restricted common stock [to Richard Verdiramo] for services rendered [as] its President" (SEC 56.1 ¶¶ 12–13; Defs. 56.1 ¶¶ 12–13);[5]

(ix) Irving Rothstein, Esq., an attorney retained by RECOV to provide an opinion on the April 7, 2005 Resolution, wrote a letter to the Transfer Agent, dated April 7, 2005 ("Rothstein Opinion"), concluding that "[t]he proposed issuance [of certain RECOV shares in the April 7, 2005 Resolution] . . . appears to meet the requirements of Rule 144 for tacking" (Richard Verdiramo Decl. ¶ 43);

(x) by separate letter to the Transfer Agent, dated April 7, 2005, Vincent Verdiramo, also as "counsel to RECOV," opined that the April 7, 2005 Resolution's proposed issuance of 6.1 million shares to Richard Verdiramo was "allowable" under federal securities law (Conway Decl. Ex. 20R, at 1);

(xi) on April 8, 2005, pursuant to the April 7, 2005 Resolution, the Transfer Agent issued 1,756,000 free trading shares of RECOV common stock as follows: 333,334 shares to Edward Meyer; 150,000 shares to Marie Meyer, Edward Meyer's daughter; 183,333 shares to Ross Laterra, Edward Meyer's step-son; 333,333 shares to Greenwood Capital Holdings, Inc., a company controlled by Chen; 126,000 shares to Public Entity Acquisition Corp., a company controlled by Vincent and Richard Verdiramo; 300,000 shares to Illuminate International Corp., a company controlled by Vincent Verdiramo; and 330,000 shares to Worldwide Connect, LLC, a company controlled by individuals with whom Vincent and Richard Verdiramo had previously worked (see SEC 56.1 ¶ 15; Defs. 56.1 ¶ 15);

---

[5]    Restricted securities are "[s]ecurities acquired directly or indirectly from the issuer or from an affiliate of the issuer, in a transaction or chain of transactions not involving any public offering."  17 C.F.R. § 230.144(a)(3)(i).

(xii) on April 8, 2005, the Transfer Agent "issued 6,100,000 shares of restricted common stock to [Richard Verdiramo]." This number of shares accounted for "more than 70% of [RECOV's] . . . outstanding shares" at the time (SEC 56.1 ¶¶ 14, 27; Defs. 56.1 ¶¶ 14, 27);

(xiii) Richard Verdiramo did not report to the SEC his acquisition of the 6,100,000 shares of RECOV stock described in paragraph (xii) above, nor did he timely report to the SEC any change in his beneficial ownership of RECOV (SEC 56.1 ¶¶ 28, 30–31; Defs. 56.1 ¶¶ 28, 30–31);

(xiv) on May 26, July 18, and July 22, 2005, respectively, Richard Verdiramo signed three other RECOV Board of Directors resolutions authorizing the Transfer Agent to issue, collectively, 1,491,495 free trading shares of RECOV common stock to four separate entities and three individuals (SEC 56.1 ¶¶ 16–18; Defs. 56.1 ¶¶ 16–18);

(xv) on May 26, July 19, and July 22, 2005, respectively, the Transfer Agent issued 1,491,495 free trading shares of RECOV common stock pursuant to the resolutions referred to in paragraph (xiv) above (SEC 56.1 ¶ 19, Defs. 56.1 ¶ 19; Conway Decl. Exs. 8R, 9R, 10R);

(xvi) at all relevant times, Richard Verdiramo sent the Transfer Agent written instructions "by facsimile" and the Transfer Agent "used the mails to distribute the share certificates to the intended recipients" (SEC 56.1 ¶¶ 20, 24; Defs. 56.1 ¶¶ 20, 24);

(xvii) between July 20 and September 13, 2005, Chen sold 158,333 RECOV shares (which she had received through the April 7, 2005 Resolution) "in [fifteen] unregistered transactions through her interstate brokerage account" (SEC 56.1 ¶ 32; Conway Decl. Ex. 19R; SEC Reply at 11, 12 n.10);

(xviii) between July 15, 2005 and February 6, 2006, Vincent Verdiramo sold 109,000 RECOV shares (which he had received through the April 7, 2005 Resolution) "in [nineteen] unregistered transactions through his company Illuminate Corp. through his interstate brokerage account" (SEC 56.1 ¶ 36; Defs. 56.1 ¶ 36; Conway Decl. Ex. 14R; SEC Reply at 3 n.3, 12 n.10);

(xix) no registration statement was on file or in effect with the SEC for any of the transactions involving RECOV stock referred to in paragraphs (xvii) and (xviii) above (SEC 56.1¶ 21; Defs. 56.1 ¶ 21); and

(xx) Defendants did not file a notice of proposed sale, i.e., Form 144, for the period during which the sales of the securities referred to in paragraphs (xvii) and (xviii) above occurred, i.e., between January 1 and December 31, 2005 (SEC 56.1 ¶ 25; Defs. 56.1 ¶ 25).[6]

## III.    Legal Standard

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); SEC v. Empire Dev. Grp., LLC, No. 07 Civ. 3896, 2008 WL 2276629, at *6 (S.D.N.Y. May 30, 2008). "[T]he SEC, as the moving party, bears the initial burden of showing 'the absence of a genuine issue of material fact.'" SEC v. Softpoint, Inc., 958 F. Supp. 846, 859 (S.D.N.Y. 1997) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "Where a moving party meets that initial burden, the opposing party must come

---

[6]     At all relevant times, Rule 144(h) required that a Form 144 be filed with the SEC "[i]f the amount of securities to be sold in reliance upon the rule . . . has an aggregate sale price in excess of $10,000." 17 C.F.R. § 230.144(h). Rule 144(h) was amended in 2008 to require the filing of a Form 144 for securities sold with "an aggregate sale price in excess of $50,000." 17 C.F.R. § 230.144(h).

forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).

"The purpose of the [Section 5] registration requirement, and of the Securities Act as a whole, is to 'protect investors by promoting full disclosure of information thought necessary to informed investment decisions.'"  Id. (citing SEC v. Ralston Purina Co., 346 U.S. 119, 124 (1953)).  "Registration exemptions are construed strictly to promote full disclosure of information for the protection of the investing public."  SEC v. Cavanagh, 445 F.3d 105, 115 (2d Cir. 2006) ("Cavanagh III"); see also SEC v. Kern, 425 F.3d 143, 148 (2d Cir. 2005) ("Kern II").

"When a motion for summary judgment is unopposed, . . . 'the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.'"  Empire, 2008 WL 2276629, at *7 (citing Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004)).

## IV.   Analysis

### Objections to the Magistrate Judge's July 26, 2011 Order

Preliminarily, Vincent and Richard Verdiramo, on August 8, 2011, filed objections to an order issued July 26, 2011 by United States Magistrate Judge Andrew J. Peck, to whom the matter had been referred for general pretrial purposes.  Judge Peck's July 26, 2011 order denied Vincent and Richard Verdiramo's motion, filed July 20, 2011 without a supporting memorandum of law, to "dismiss[] the complaint in this action," or, "in the alternative," to "preclud[e] [the SEC] from offering evidence that [D]efendants were not entitled to rely on the exemption available under . . . Rule 144," as a sanction for the SEC's late production of

documents in this action.  (Not. of Mot., dated July 20, 2011, at 1.)  Judge Peck concluded, among other things, that Vincent and Richard Verdiramo had "not demonstrated prejudice by the SEC's late production of the material," and presented "absolutely no detail as to the contents of the late-produced documents or how earlier production would have benefitted [them]."  (Judge Peck's Order, dated July 26, 2011, at 1–2 (emphasis in original).)

Vincent and Richard Verdiramo argue that Judge Peck "embraced fully the SEC's self-serving justification that the 13,000 [late-produced] documents were irrelevant and that the non-disclosure entailed no prejudice to the Verdiramo[s]."  (Objections, dated Aug. 8, 2011, at 1.)  They do not argue, let alone establish, that the late disclosure of documents was prejudicial to them, see Monaghan v. SZS 33 Assocs., L.P., 148 F.R.D. 500, 508–09 (S.D.N.Y. 1993), or that Judge Peck's "determination was 'clearly erroneous or contrary to law,'" Dubin v. E.F. Hutton Grp., Inc., 125 F.R.D. 372, 373 (S.D.N.Y. 1989); Flaherty v. Filardi, No. 03 Civ. 2167, 2009 WL 749570, at *19 (S.D.N.Y. Mar. 20, 2009) ("The clearly erroneous standard is highly deferential, and magistrate judges are afforded broad discretion in resolving non-dispositive disputes . . . ." (internal quotation marks and alterations omitted)); Weiss v. La Suisse, 161 F. Supp. 2d 305, 321 (S.D.N.Y. 2001); see Fed. R. Civ. P. 72(a); (SEC's Opp'n to Objections, dated Aug. 15, 2011, at 1 ("[Vincent and Richard Verdiramo] merely repeat [the] conclusory arguments of generalized harm, emphasize the number of documents at issue . . . and seek sanctions that have no rational connection to the event in question."))  Judge Peck's conclusion that "case-ending sanctions" were not appropriate was reasonable and certainly well within his broad discretion.  (Judge Peck's Order at 2); Dubin, 125 F.R.D. 372, at 373–74; see Bobal v. Rensselaer Polytechnic Inst., 916 F.2d 759, 764 (2d Cir. 1990); Moss v. Enlarged City Sch. Dist. of the City of

Amsterdam, 166 F. Supp. 2d 668, 671 (N.D.N.Y. 2001) ("[The] Magistrate Judge['s]

determination as to whether or not to impose discovery sanctions under these circumstances

was well within his broad discretion."); Livshits v. Natural Y Surgical Specialties, Inc., No.

87 Civ. 2403, 1990 WL 151141, at *3 (S.D.N.Y. Sept. 27, 1990).

### Axelrod Report

The SEC contends that the Axelrod Report should be excluded for the following

reasons:  First, it contains "just the type of legal argument by an attorney not permitted in this

Circuit as expert opinion."  (SEC Expert Mem. at 3); see United States v. Bilzerian, 926 F.2d

1285, 1294 (2d Cir. 1991) ("[T]estimony encompassing an ultimate legal conclusion based

upon the facts of the case is not admissible."); Feinberg v. Katz, No. 01 Civ. 2739, 2007 WL

4562930, at *8 (S.D.N.Y. 2007).  Second, "[t]here is nothing reliable about Axelrod's

methodology" because, although "[h]e states his opinion based upon [his] 'knowledge and

experience as an attorney,'" "[t]he issue of whether [D]efendants violated Section 5 of the

Securities Act, or qualified for the Rule 144 safe harbor, is not a matter of 'knowledge and

experience'" but "is a matter of controlling case law."  (SEC Expert Mem. at 3, 6

("[Axelrod's] interpretation is nothing more than his own personal and subjective inferences,

which is likewise improper for an expert.")); see Hygh v, Jacobs, 961 F.2d 359, 364 (2d Cir.

1992).  And third, "nowhere in [Axelrod's] 'Curriculum Vitae' does it say that Axelrod has

ever before been qualified by a Court or other tribunal as an expert."  (SEC Expert Mem. at 5

("Of all the securities experts in the New York area, the Verdiramos went to Houston, Texas

to find Mr. Axelrod to give this 'expert opinion.'").)[7]

---

[7]     Notwithstanding the cogency of the SEC's arguments, by memo endorsement, dated
May 11, 2011, the Court has already denied the SEC's motion to exclude the Axelrod Report
"for failure to comply with the Court's Individual Rules."  (Memo Endorsement, dated May

The Axelrod Report does not help Vincent and Richard Verdiramo's cause because, as the Court concludes below, the transactions at issue were not exempt from Section 5 registration under Rule 144(k).  The securities sold by Vincent Verdiramo in 2005 and early 2006 clearly were not held by him for the two years required under Rule 144(k).  See supra ¶¶ xi, xviii; see infra pages 16–17; 17 C.F.R. § 230.144(k).  And, it is indisputable that Vincent Verdiramo was an "affiliate" of RECOV at the time of his unregistered sales of RECOV stock.  See supra ¶¶ ii–v, x; see infra pages 17–20; 17 C.F.R. § 230.144(k).

**Motion to Strike**

The SEC also moves to strike Vincent and Richard Verdiramo's declarations, dated April 15, 2011, because, among other reasons, the "declaration[s do not] state that the statements are 'true and correct'" as required by 28 U.S.C. § 1746, and because they "contain information largely irrelevant to the issue of [their] liability under Section 5."  (SEC Reply at 7 n.7.)  As discussed below, the SEC is entitled to judgment as a matter of law and "[t]he Court need not strike or otherwise disregard the declarations submitted by [Defendants] . . . to reach this conclusion.  Consequently, Plaintiffs' motion to strike all or part of these declarations is moot."  Fraser v. Fiduciary Trust Co. Int'l, No. 04 Civ. 6958, 2009 WL 2601389, at *1 n.2 (S.D.N.Y. Aug. 25, 2009).

**Section 5 Claims**

Section 5 provides that it is unlawful for any person to use the channels of interstate

---

11, 2011.)  "[A]ny such motion should have been filed with the underlying papers."  (Memo Endorsement, dated May 11, 2011); see also Brenord v. Catholic Med. Ctr. of Brooklyn & Queens, Inc., 133 F. Supp. 2d 179, 188 n.4 (E.D.N.Y. 2001) ("The ability of a district court to evaluate expert testimony sua sponte and exclude such testimony where appropriate has been recognized by several courts.") (collecting cases).

commerce to sell a security unless a registration statement is in effect as to such security.

See SEC v. Cavanagh, 155 F.3d 129, 132–33 (2d Cir. 1998) ("Cavanagh I").  "To establish a

prima facie violation of Section 5, the SEC must prove three elements: (1) that no registration

statement was in effect for the securities; (2) that the defendant directly or indirectly sold or

offered to sell the securities; and (3) that interstate means were used in connection with the

offer or sale."  SEC v. Kern, No. 98 Civ. 1818, 2004 WL 1594818, at *16 (S.D.N.Y. July 16,

2004) ("Kern I") (citing Europe & Overseas Commodity Traders v. Banque Paribas London,

147 F.3d 118, 124 n.4 (2d Cir. 1998)).  "Once the SEC has [established] a prima facie case,

the burden shifts to the defendant to show that the securities were exempt from the

registration requirement."  Id.

### Vincent Verdiramo

The SEC clearly has established a prima facie violation of Section 5 by Vincent

Verdiramo.  See Softpoint, 958 F. Supp. at 861; see also SEC v. Tecumseh Holdings Corp.,

No. 03 Civ. 5490, 2009 WL 4975263, at *4 (S.D.N.Y. Dec. 22, 2009).  No registration

statement was filed or in effect in 2005 or early 2006 covering Vincent Verdiramo's sales of

RECOV shares.  See supra ¶ xix; (see SEC 56.1 ¶ 21; Defs. 56.1 ¶ 21.)  Vincent Verdiramo

sold 109,000 RECOV shares between July 15, 2005 and February 6, 2006.  See supra ¶ xviii;

(see SEC 56.1 ¶ 36; Defs. 56.1 ¶ 36.)  And, such sales were conducted by interstate means

through Vincent Verdiramo's brokerage account.  See supra ¶ xviii; (see SEC 56.1 ¶¶ 21, 36;

Defs. 56.1 ¶¶ 21, 36; Conway Decl. Ex. 11); SEC v. Lybrand, 200 F. Supp. 2d 384, 392

(S.D.N.Y. 2002) ("Lybrand II").

Vincent Verdiramo has not met his burden to show that these unregistered sales were

exempt from registration.  He contends unpersuasively that (a) his sales of RECOV shares

were exempt from registration under the Rule 144(k) safe harbor because his shares were "derived from" a promissory note issued on April 1, 2000 by RECOV to Maureen Hogan ("Hogan") and that "the shares issued by [the Transfer Agent to Vincent Verdiramo in 2005] were deemed to have been issued when the [promissory] note was issued [to Hogan] in April 2000"; (b) he relied in good faith on the Rothstein Opinion, which states that "the proposed issuance by [RECOV] to [Vincent Verdiramo] . . . **appears** to meet the requirements of Rule 144 for tacking the holding period of [Hogan's] note[] onto the holding period of equity stock to be received by [Vincent Verdiramo]"; and (c) Section 4(1) of the Securities Act also exempts Vincent Verdiramo's sales from registration because Vincent Verdiramo is a "person other than an issuer, underwriter, or dealer."  (Defs. Mem. at 11, 14–16 (emphasis added); Vincent Verdiramo Decl. ¶ 9.)[8]

Under Rule 144(k), "if a person is not now and has not been an affiliate of the issuer within the last three months, and at least two years have elapsed since the securities to be sold were last acquired from an issuer or affiliate of the issuer, then that person need not comply with the other Rule 144 requirements."  Kern II, 425 F.3d at 148 (citing 17 C.F.R. § 230.144(k)).  The seller may, in limited circumstances such as the "conversion" scenario provided for in Rule 144(d)(3)(ii) ("If the securities sold were acquired from the issuer for a consideration consisting solely of other securities of the same issuer surrendered for conversion . . . ."), satisfy the "two-year holding period by adding – 'tacking' – the holding period of the prior non-affiliate holder to their own holding period"  SEC v. M&A West, Inc., 538 F.3d 1043, 1049 (9th Cir. 2008) (citing 17 C.F.R. § 230.144(k)); see also SEC v.

---

[8]      The parties do not fully explain who Hogan is, other than to state that she was the holder of a promissory note, dated April 1, 2000, issued by RECOV.  (Decl. of Richard Verdiramo, dated Apr. 11, 2011 ("Richard Verdiramo Decl."), ¶ 6; SEC Reply at 4.)

Cavanagh, 1 F. Supp. 2d 337, 372 (S.D.N.Y. 1998) ("Cavanagh I"); 17 C.F.R.

§ 230.144(d)(3)(ii).

Vincent Verdiramo did not satisfy Rule 144(k)'s two-year holding requirement

because he acquired 109,000 RECOV shares in April 2005 and sold them between July 15,

2005 and February 6, 2006.  See supra ¶¶ xi, xviii; (see SEC 56.1 ¶¶ 15, 36; Defs. 56.1 ¶¶ 15,

36); Kern II, 425 F.3d at 148–49 ("[Rule 144(k)] mandates . . . a two-year holding period

between the time the securities were acquired from the issuer or an affiliate of the issuer and

the time they are resold.").  And, Vincent Verdiramo was not able to "tack" onto Hogan's

prior holding period pursuant to Rule 144(k) because the shares Vincent Verdiramo sold in

2005 were obtained from RECOV, not from Hogan.  See supra ¶¶ viii, xi; (see SEC 56.1

¶¶ 12–13, 15; Defs. 56.1 ¶¶ 12–13, 15); Kern II, 425 F.3d at 151; Phlo Corp. v. Stevens, 62

F. App'x 377, 382–83 (2d Cir. 2003); see also Lybrand II, 200 F. Supp. 2d at 396; M&A

West, Inc., 538 F.3d at 1049.

There is no basis – in law or common sense – for concluding that the 109,000 shares

may "be deemed" to have been issued to Hogan at the time the promissory note was issued to

her in April 2000, pursuant to Rule 144(d)(3)(ii).  These shares were never issued to Hogan,

who returned the promissory note to RECOV in 2005.  (SEC Reply at 5.)  RECOV's

issuance of shares to Vincent Verdiramo on April 8, 2005 occurred pursuant to the April 7,

2005 Resolution.  See supra ¶¶ viii, xi, xviii.  Vincent Verdiramo's sales of those shares

between July 15, 2005 and February 6, 2006, were transactions separate and apart from

Hogan's receipt and later return of her promissory note to RECOV earlier in 2005.[9]  See

---

[9]      Defendants have provided no plausible arguments or evidence to support the
conclusion that Hogan either received shares or converted her note into the 109,000 shares
later sold in unregistered transactions by Vincent Verdiramo.  As the SEC points out, "[t]he

supra ¶¶ viii, xi, xviii; SEC v. Universal Exp., Inc., 475 F. Supp. 2d 412, 422 (S.D.N.Y. 2007) ("Registration of a security is transaction-specific, in that the requirement of registration applies to each act of offering or sale."); Campbell v. Liberty Transfer Co., No. 02 Civ. 3084, 2006 WL 3751529, at *14 (E.D.N.Y. Dec. 19, 2006) ("[T]acking" is available only when "the [newly acquired] securities do not create a change in the holder's capital at risk" (citing Marc I. Steinberg & Joseph P. Kempler, The Application and Effectiveness of SEC Rule 144, 49 Ohio St. L.J. 473, 485 (1988))); Cavanaugh II, 2004 WL 1594818, at *16 ("Each sale of a security . . . must either be pursuant to a registration statement or fall under a registration exemption.").  The evidence presented establishes that these 109,000 shares were newly issued to Vincent Verdiramo, based upon the April 7, 2005 Resolution, and without any involvement by or reference to Hogan.  See supra ¶¶ viii, xi, xviii.

Assuming, arguendo, that Vincent Verdiramo could somehow satisfy Rule 144(k)'s holding period (which he clearly cannot do), nowhere in his submissions does Vincent

---

Verdiramos provide no board resolution specifically mentioning [any] conversion of the (unsigned) Hogan note" into Vincent Verdiramo's shares, and "Hogan testified under oath in her [December 2010] deposition that she never converted the note and was still owed the money."  (SEC Reply at 7–8; See Vincent Verdiramo Decl. Ex. 5 at 1 (SEC: "Did you ever transfer this loan to anyone?"  HOGAN: "No."  SEC: "Did you ever transfer the loan or assign the loan to anyone else?"  HOGAN: "No."  SEC: "Okay. Did you ever forgive the loan?"  HOGAN: "No.").)  On February 1, 2011, Hogan wrote an unsworn letter to the SEC stating that she then recalled allowing Vincent Verdiramo to "do whatever he wanted with [her n]ote" to "help him" "pay off a lot of RECOV's debt," but that "no written record of the agreement was ever made."  (Vincent Verdiramo Decl. ¶¶ 26–27 & Ex. 5 at 2; see SEC Reply at 7 ("[T]he Hogan note story smacks of a complete fabrication and is supported by no admissible (or believable) facts.").)

Were the Court to credit Hogan's (unsworn, untimely, and farfetched) claim, such evidence would only help to (further) establish Vincent Verdiramo's influence over the management and policies of RECOV, and thus his status as a RECOV "affiliate," which would independently preclude him from safe harbor protection under Rule 144(k).  See infra pages 17–20; see Kern II, 425 F.3d at 150; M&A West, Inc., 538 F.3d at 1051; 17 C.F.R. § 230.144(k).

Verdiramo contend that he was not an affiliate of RECOV at the time of his unregistered

sales in 2005.  As the SEC persuasively contends, Vincent Verdiramo was clearly an affiliate

of RECOV at the time of his sales of RECOV shares and he cannot rely on the Rule 144(k)

safe harbor.  (See SEC Reply at 4–8; Vincent Verdiramo Decl. ¶¶ 12–14, 18; Richard

Verdiramo Decl. ¶¶ 27–28, 38; Conway Decl. Ex. 21R); see also 17 C.F.R. § 230.144(k)

(only a seller "who is not an affiliate of the issuer at the time of his sale and has not been an

affiliate during the preceding three months" is exempt from Section 5 registration).  Vincent

Verdiramo was "a person that directly, or indirectly through one or more intermediaries,

control[led] . . . [an] issuer," 17 C.F.R. § 230.144(a)(1), by virtue of his active participation

in and influence over the management and policies of RECOV at the time of (and during the

three months preceding) his unregistered sales, as evidenced by: (i) Vincent Verdiramo's

"central role in the plans to effect a [sale]" of a controlling interest in RECOV to Meyer on

February 8, 2005; (ii) Vincent Verdiramo's holding, as of March 31, 2005, of $255,953 of

RECOV's debt, which constituted 64% of RECOV's total outstanding notes and 42% of its

total outstanding liabilities; (iii) RECOV and Verdiramo & Verdiramo P.A.'s "share[d] [use

of] office space," and Verdiramo & Verdiramo PC's "agree[ment] not to charge [RECOV]

rent . . . for [such] . . . use"; (iv) Vincent Verdiramo's repayment, between 1999 and 2005, of

$140,000 of RECOV's corporate debt out of his own assets; (v) the letter, dated April 7,

2005, written by Vincent Verdiramo, "as counsel to RECOV," to the Transfer Agent, opining

that "[t]he [6.1 million] shares issued to Richard Verdiramo" "are allowable"; (vi) the

attorney-client relationship between Vincent Verdiramo and his son Richard Verdiramo, who

was Chairman, CEO, President, and CFO of RECOV, and who, as of March 31, 2005, owned

1 million shares, or 7.48%, of RECOV common stock; and (vii) Vincent Verdiramo's wife's

ownership of approximately 3.4 million shares of RECOV stock as of March 31, 2005, which made her the largest single holder of RECOV shares, see supra ¶¶ ii–vii, x; (see SEC 56.1 ¶¶ 8, 12–13; Defs. 56.1 ¶¶ 8, 12–13; Defs. Mem. at 10; Richard Verdiramo Decl. ¶¶ 27–28, 38–39; Vincent Verdiramo Decl. ¶¶ 12–14, 18; Conway Decl. Exs. 20R, 21R); United States v. Corr, 543 F.2d 1042, 1050 (2d Cir. 1976) (whether someone is an affiliate "depends upon the totality of the circumstances including an appraisal of the influence upon management and policies of [the company] by the person involved").[10]

Notwithstanding Vincent Verdiramo's claim that he relied on the Rothstein Opinion, reliance on "the advice of counsel . . . provides no protection against a violation of a strict liability statute like Section 5." SEC v. Cavanagh, No. 98 Civ. 1818, 2004 WL 1594818, at *16 (S.D.N.Y. July 16, 2004) ("Cavanagh II"); Softpoint, 958 F. Supp. at 859–60 ("Scienter is not an element of a Section 5 violation.") (citing SEC v. Universal Major Indus. Corp., 546 F.3d 1044, 1046–47 (2d Cir. 1976)); see SEC v. Manor Nursing Ctrs., Inc., 458 F.2d 1082 (2d Cir. 1972) (rejecting defendants' claim of good-faith reliance on counsel as a defense to liability for violating the securities laws).

Finally, Vincent Verdiramo's sales of RECOV shares could not have been exempt from registration under Section 4(1) of the Securities Act because his affiliate status, see

---

[10]    There can be no doubt that Vincent Verdiramo, who also founded RECOV in 1994 and served as its Chairman, Chief Executive Officer, and President until March 1, 2000, "was not acting merely as [RECOV's] attorney, but was an active participant in and major influence on the 'management and policies' of [RECOV]" based, in part, upon "his relationship to the [CEO, his son, and to the largest shareholder, his wife,] of the company and . . . his central role in the plans to effect a merger." United States v. Sprecher, 783 F. Supp. 133, 159 (S.D.N.Y. 1992); see Kern II, 425 F.3d at 150; M&A West, Inc., 538 F.3d at 1051; SEC v. Platform Wireless Int'l Corp., 617 F.3d 1092, 1089 (9th Cir. 2010); Lybrand II, 200 F. Supp. 2d at 395; SEC v. Spongetech Delivery Sys., No. 10 Civ. 2031, 2011 WL 887940, at *17 (E.D.N.Y. Mar. 14, 2011); SEC v. 800america.com, Inc., No. 02 Civ. 9046, 2006 WL 3422670, at *7 (S.D.N.Y. Nov. 28, 2006); see supra ¶¶ ii–vii, x.

supra pages 17–19, "precludes any eligibility for th[at] exemption," Platform Wireless, 617

F.3d at 1090 (citation omitted); see also Cavanagh III, 445 F.3d at 111 n.12; (Defs. Mem. at

14.)[11]

### Richard Verdiramo

Richard Verdiramo argues that the SEC has not shown a prima facie violation of

Section 5 because he "never sold a single share of RECOV or IMNI during the period

relevant to this action."  (Richard Verdiramo Decl. ¶ 49.)  The SEC replies persuasively that

Richard Verdiramo "is liable not because he himself sold [any shares], but because he was a

necessary and substantial participant in the unregistered sales of shares by Chen, Edward

Meyer, and V[incent] Verdiramo."  (SEC Reply at 9); see supra ¶¶ viii, xi, xvii–xix.

Richard Verdiramo violated Section 5 because he was a necessary and substantial

participant in the unregistered sales of RECOV shares by Chen, Meyer, and his father,

Vincent Verdiramo.  See supra ¶¶ viii, xi, xvii–xix; (see SEC 56.1 ¶¶ 12–13, 18–19, 32–33,

36; Defs. 56.1 ¶¶ 12–13, 18–19, 36); see SEC v. Czarnik, No. 10 Civ. 745, 2010 WL

4860678, at *11 (S.D.N.Y. Nov. 29, 2010) ("Liability for violations of Section 5 . . . can

extend . . . to all necessary participants in the sale of unregistered stock."); see also SEC v.

Chinese Consol. Benev. Ass'n, Inc., 120 F.2d 738, 741 (2d Cir. 1941).  The evidence

presented, including the April 7, 2005 Resolution signed by Richard Verdiramo, see supra

¶ viii, demonstrates that Richard Verdiramo personally authorized and directed the issuance

of the RECOV shares to Vincent Verdiramo, Meyer, and Chen that were later sold in

unregistered transactions, see supra ¶¶ viii, xi, xvii–xix; (see SEC 56.1 ¶¶ 12–19, 20, 24, 32,

---

[11]     As noted, Vincent Verdiramo does not (and cannot) contend that he was not an
"affiliate" of RECOV at the time of his unregistered sales.  He does not (and cannot) meet his
burden under either the Rule 144(k) or the Section 4(1) exemption from registration.  See
Cavanagh III, 445 F.3d at 111 n.12; Sprecher, 783 F. Supp. at 159.

36; Defs. 56.1 ¶¶ 12–20, 24, 36; Conway Decl. Exs. 7R–10R); see also Universal Exp., Inc., 475 F. Supp. 2d at 424 ("[D]efendants do not dispute that the securities they issued were then sold into the market.  There is no doubt that, without their actions, 'the [unregistered] sale transactions would not have taken place.'" (quoting SEC v. Murphy, 626 F.2d 633, 651–52 (9th Cir. 1980)); Softpoint, 958 F. Supp. at 860 (where defendant "helped prepare the . . . [documents] that led to the issuance of [company] stock" which was later sold in unregistered transactions).  Prior to the issuance of the RECOV shares, Richard Verdiramo also retained Rothstein to write an opinion letter to the Transfer Agent stating that the shares were exempt from Section 5's registration requirements.  See supra ¶ ix; (Richard Verdiramo Decl. ¶ 42.) The Transfer Agent relied and acted upon the Rothstein Opinion and upon the April 7, 2005 Resolution (which was also signed by Richard Verdiramo, see supra ¶ viii) to issue the free trading RECOV shares to Vincent Verdiramo, Meyer, and Chen, among others.  (See Dep. Tr. of Transfer Agent Howard Manger, dated Dec. 7, 2006, at 21:20-21 ("Q: This would be the letter [from Rothstein that] you would rely on to issue the [RECOV] shares free trading? A: Yes."); 31:10-14 ("Q: To your recollection, did you ask [RECOV] for any additional proof that these people who were supposed to receive shares[, i.e., Vincent Verdiramo, Meyer, and Chen] were either non-affiliates or had held their notes for two years?  A: I relied on [RECOV's April 7, 2005] Resolution."); see Spongetech, 2011 WL 887940, at *18 (where defendant was a "necessary participant and substantial factor in making the unregistered offerings").  "[B]ut for [Richard Verdiramo's] participation, the sale transactions [by Vincent Verdiramo, Meyer, and Chen] would not have taken place." Universal Exp, 475 F. Supp. 2d at 424; see SEC v. Ramoil Mgmt., Ltd., No. 01 Civ. 9057,

2007 WL 3146943, at *10–11 (S.D.N.Y. Oct. 25, 2007); see also Cavanagh I, 1 F. Supp. 2d at 372.

### Chen

The SEC clearly has established a prima facie violation of Section 5 by Chen.  See Empire, 2008 WL 2276629, at *7.  No registration statement was filed or on file in 2005 for Chen's sales of RECOV stock.  See supra ¶ xix; (see SEC 56.1 ¶ 21.)  Chen sold 158,333 RECOV shares between July 20, 2005 and September 13, 2005.  See supra ¶ xvii; (see SEC 56.1 ¶ 32.)  And such sales were conducted by interstate means through Chen's brokerage account.  See supra ¶ xvii; (see SEC 56.1 ¶ 32); see also Cavanagh II, 2004 WL 1594818, at *16.

Because Chen has not asserted, much less presented evidence, that any registration exception applied to her unregistered sale of shares, the SEC's request for summary judgment as to Chen is granted.[12]  See SEC v. Rabinovich & Assoc., LP, No. 07 Civ. 10547, 2008 WL 4937360, at *4 (S.D.N.Y. Nov. 18, 2008); see also SEC v. Franklin, 175 F. App'x 467 (2d Cir. 2006); SEC v. Opulentica, LLC, 479 F. Supp. 2d 319, 326 (S.D.N.Y. 2007); SEC v. Tee to Green Golf Parks, Inc., No. 00 Civ. 4785, 2011 WL 147862, at *8 (W.D.N.Y. Jan. 18, 2011).

---

[12]     Because Richard Verdiramo was also a necessary and substantial participant in Chen's (and Meyer's) unregistered sales of securities, see supra pages 20–22, and because neither Chen nor Meyer has attempted to establish an exemption from registration, see supra note 1 & page 22, the Court would also be able to conclude, based only upon Chen's (and Meyer's) sales and even without analyzing Vincent Verdiramo's sales of RECOV shares, that Richard Verdiramo violated Section 5.  See, e.g., Cavanagh I, 1 F. Supp. 2d at 372 ("[Section 5] liability extends beyond those who sell stock to all necessary participants in a sale of unregistered stock.").

**Sections 13(d) & 16(a) Claims Against Richard Verdiramo**

The SEC argues, among other things, that Richard Verdiramo violated Section 13(d) of the Exchange Act because he failed timely to file a Schedule 13D amendment when he acquired 6.1 million shares of RECOV; and that he violated Section 16(a) of the Exchange Act by "failing to timely file a Form 4 [and Form 5] reporting [t]his change in beneficial ownership of RECOV shares." See supra ¶ xiii; (SEC Mem. at 8–9.) Richard Verdiramo contends that "the 6.1 million shares were [only] issued [to him] pending the consummation of [a] proposed merger" between RECOV and CRC and, as a result, "there were no changes in [his] beneficial ownership of RECOV." (Defs. Mem. at 17–18.)

"Section 13(d)(1) and Rule 13d-1(a) require a stock purchaser acquiring beneficial ownership of 5% or more of a company's securities to disclose his ownership to the SEC by filing a Schedule 13D . . . ." SEC v. Wyly, -- F. Supp. 2d --, 2011 WL 1226381, at *2 (S.D.N.Y. 2011) (citing 15 U.S.C. § 78m(d)(1)(D), 17 C.F.R. § 240.13d-1(a)); Rorer Grp. Inc. v. Oppenheimer & Co., Inc., No 82 Civ. 7906, 1983 WL 1330 (S.D.N.Y. June 27, 1983); U.S. v. Bilzerian, 926 F. 2d 1285, 1298 (2d Cir. 1991); SEC v. Sierra Brokerage Servs., Inc., 608 F. Supp. 2d 923, 954 (S.D. Ohio 2009).[13] Section 13(d)(2) sets forth a "continuing obligation on the person filing [the Schedule 13D] to amend his statements '[i]f any material change' occurs," SEC v. Drexel Burnham Lambert, Inc., 837 F. Supp. 587, 608 (S.D.N.Y. 1993), e.g., when the person who was required to file the statement "acqui[res] . . . [additional] securities in an amount equal to one percent or more of [such] securities," 17 C.F.R. § 240.13d-2(a); see SEC v. Amster & Co., 762 F. Supp. 604, 610 (S.D.N.Y. 1991).

---

[13]     "A person beneficially owns a security if such person directly or indirectly . . . has (i) voting power, which includes the power to vote, or to direct the voting of, such security; and/or (ii) investment power, which includes the power to dispose, or to direct the disposition of, such security." Wyly, 2011 WL 1226381, at *2.

Section 16(a) and Rule 16a-3 require every person "who is a director or an officer of the issuer of securit[ies]" to file a Form 4 with the SEC reporting any "changes in beneficial ownership," see Sierra, 608 F. Supp. at 954 (citing 15 U.S.C. § 78p(a); 17 C.F.R. § 240.16a-3), and also to "file an annual statement [reporting such changes] on [a] Form 5," SEC v. Shattuck Denn Mining Corp., 297 F. Supp. 470, 471 (S.D.N.Y. 1968) (citing 17 C.F.R. § 240.16a-3); SEC v. Teo, No. 04 Civ. 1815, 2010 WL 3184349, at *9 (D.N.J. Aug. 10, 2010).

Summary judgment is granted in favor of the SEC on its Sections 13(d) and 16(a) claims against Richard Verdiramo, who owned more than 5% of RECOV stock, see supra ¶ vii, and was Chairman, CEO, President, and CFO of RECOV, see supra ¶ vi, failed to file a Schedule 13D amendment reporting his acquisition of over 70% of outstanding RECOV shares, and failed also to file Forms 4 and 5 reporting such change in beneficial ownership, see supra ¶¶ xii, xiii; see SEC v. Solucorp Indus., Ltd., 274 F. Supp. 2d 379, 420 (S.D.N.Y. 2003); SEC v. Sands, 903 F. Supp. 1149, 1164–65 (C.D. Cal. 1995); SEC v. Olins, No. C-07-6423, 2010 WL 900518, at *1–2 (N.D. Cal. Mar. 12, 2010).  Prior to April 7, 2005, Richard Verdiramo owned 1 million shares in RECOV, which exceeded 5% of outstanding RECOV common stock.  See supra ¶ vii; (see SEC 56.1 ¶ 26; Defs. 56.1 ¶ 26.)  He acquired over 1% (in fact, over 70%) of additional RECOV shares on April 8, 2005 when 6.1 million additional shares were issued by RECOV and transferred to him.  See supra ¶¶ viii, xii; (see SEC 56.1 ¶¶ 14, 27–28; Defs. 56.1 ¶¶ 14, 27–28); see also Sands, 902 F. Supp. at 1165.  At the time the 6.1 million shares were transferred to him, Richard Verdiramo was RECOV's Chairman, CEO, President, and CFO.  See supra ¶ vi.  And, after Richard Verdiramo acquired those 6.1 million RECOV shares, he failed to file a Schedule 13D amendment; he also failed to file the

required statement of change in beneficial ownership (Form 4); and he also failed to file the

annual statement (Form 5).  <u>See</u> <u>supra</u> ¶¶ xiii; (<u>see</u> SEC 56.1 ¶¶ 26–28, 30–31; Defs. 56.1

¶¶ 26–28, 30–31; Conway Decl. Exs. 11–12, 22–23); <u>see also</u> <u>Sands</u>, 902 F. Supp. at 1165

("The increase in ownership by an amount greater than one percent constituted a 'material'

acquisition and required [defendant] to file with the SEC an amendment to the Schedule

13D."); <u>Teo</u>, 2010 WL 3184349, at *10; <u>SEC v. Drexel Burnham Lambert Inc.</u>, 837 F. Supp.

587, 609 (S.D.N.Y. 1993); <u>SEC v. Save the World Air Inc.</u>, No. 01 Civ. 11586, 2005 WL

3077514, at *14 (S.D.N.Y. Nov. 15, 2005).

      Richard Verdiramo's assertion that he was not required to report his acquisition of the

6.1 million RECOV shares because "[t]hose shares were issued solely to enable control of

RECOV to pass if [a] merger took place" (Defs. Mem. at 18) is unpersuasive because, among

other reasons, he provides no evidence in support, <u>see</u> <u>Cavanagh II</u>, 2004 WL 1594818, at

*12 ("[C]onclusory statements are insufficient to defeat a motion for summary judgment."

(citing <u>Opals on Ice Lingerie v. Body Lines</u>, 320 F.3d 362, 370 n.3 (2d Cir. 2003))).[14]  In

fact, the record reflects that the Transfer Agent issued the 6.1 million shares of restricted

common stock to Richard Verdiramo for services rendered as RECOV's President – and not

for any other purpose, <u>see</u> <u>supra</u> ¶ viii; (<u>see</u> SEC 56.1 ¶ 13; Defs. 56.1 ¶ 13).  There is no

mention in the April 7, 2005 Resolution of any prospective merger.  <u>See</u> <u>Tee to Green</u>, 2011

WL 147862, at *4 ("A nonmoving party must do more than cast a 'metaphysical' doubt as to

---

[14]     Nor does Richard Verdiramo provide the Court with legal authority for the
proposition that acquiring and holding shares for a future (contemplated) merger is exempt
from Sections 13(d) and 16(a).  And, neither Section 13(d) nor Section 16(a) "require[s] a
showing of scienter to establish liability."  <u>Telenor East Invest AS v. Altimo Holdings &
Investments Ltd.</u>, 567 F. Supp. 2d 432, 442 (S.D.N.Y. 2008); <u>see also</u> <u>SEC v. McNulty</u>, No.
94 Civ. 7114, 1996 WL 422259, at *7 (S.D.N.Y. July 29, 1996); <u>Sierra Brokerage Servs.,
Inc.</u>, 608 F. Supp. 2d at *29 n.32; <u>SEC v. Levy</u>, 706 F. Supp. 61, 69 (D.C. Cir. 1989).

the material facts; [he] must 'offer some hard evidence showing that its version of the events is not wholly fanciful.'" (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986))).

### Injunctive Relief

The SEC argues that an injunction against all Defendants is warranted because their "conduct was not isolated," they "have provided no assurances against future violations," and they "have [not] acknowledged their wrongful conduct." (SEC Mem. at 10.) The SEC states that Vincent Verdiramo should be permanently enjoined from future violations of Section 5 because he "sold 109,000 [RECOV] shares in . . . illegal transactions," his "conduct was repeated and went [on] over a long time," "[his] conduct was knowing, or at least reckless, since [he] is a lawyer who deals in securities matters," and he is "in [a] professional position[] to repeat the [same] conduct." (SEC Reply at 11.) The SEC states that Richard Verdiramo should be permanently enjoined from future violations of Sections 5, 13(d), and 16(a) because he "issued the resolutions transferring the stock [that] result[ed] in the unregistered sales of over 700,000 [RECOV] shares," and his conduct "was knowing, or at least reckless." (SEC Reply at 11.)[15]

Vincent and Richard Verdiramo unpersuasively counter that there are no grounds for an injunction because the SEC cannot establish "a single violation," Vincent and Richard Verdiramo "ha[ve] never previously [or subsequently] been sued by the SEC," and "the events at issue took place years ago." (Defs. Opp'n at 19.)

---

[15]    The SEC argues that Chen should also be permanently enjoined from future violations of Section 5 because she "made repeated unregistered sales totaling 158,333 shares of [RECOV] securities to the unsuspecting general public"; "has shown no remorse," as evidenced by her "refus[al] to sit for her deposition" and by her failure to respond to this motion; and is reasonably likely to "repeat[]" her "illegal conduct." (SEC Reply at 11.)

"Injunctive relief is expressly authorized by Congress to proscribe future violations of federal securities laws."  <u>Cavanagh I</u>, 155 F.3d at 135; <u>see also</u> 15 U.S.C. § 78u(d).  "In order to obtain a permanent injunction, the SEC must show that there is a 'substantial likelihood of future violations of illegal securities conduct.'"  <u>Cavanagh II</u>, 2004 WL 1594818, at *28 (citing <u>Cavanagh I</u>, 155 F.3d at 135).  In making this determination, a court should look to

> (i) the fact that the defendant has been found liable for illegal conduct; (ii) the degree of scienter involved; (iii) whether the infraction is an "isolated occurrence"; (iv) whether [the] defendant continues to maintain that his past conduct was blameless; and (v) whether, because of his professional occupation, the defendant might be in a position where future violations could be anticipated.

<u>Id.</u> (citation omitted); <u>see also</u> <u>SEC v. McNulty</u>, 137 F.3d 732, 741 (2d Cir. 1998); <u>SEC v. Mgmt. Dynamics Inc.</u>, 515 F.2d 801, 807 (2d Cir. 1975).

### Vincent Verdiramo

The SEC is entitled to injunctive relief against Vincent Verdiramo preventing him from committing future violations of Sections 5.  <u>See</u> <u>SEC v. Platinum Inv. Corp.</u>, No. 02 Civ. 6093, 2006 WL 2707319, at *4 (S.D.N.Y. 2006).  Vincent Verdiramo has been found above to have violated Section 5 of the Securities Act by selling 109,000 RECOV shares in nineteen unregistered transactions between July 15, 2005 and February 6, 2006.  <u>See</u> <u>supra</u> ¶ xviii, pages 14–20.  As an attorney dealing in securities matters, and as the former Chairman, Chief Executive Officer, and President of RECOV, Vincent Verdiramo's unregistered sales of RECOV shares in violation of Section 5 was, at the very least, reckless.  <u>See</u> <u>supra</u> ¶¶ ii, x; (<u>See</u> SEC 56.1 ¶ 8; Defs. 56.1 ¶ 8; Defs. Mem. at 6); <u>see also</u> <u>Cavanaugh II</u>, 2004 WL 1594818, at *29 ("[Defendants] knew or should have known that a registration statement was required for the sale of stock . . . .  [D]efendants were sophisticated businessmen with extensive securities industry experience."); <u>SEC v. Cooper</u>, 402 F. Supp.

516, 525 (S.D.N.Y. 1975).  Vincent Verdiramo's multiple sales over a seven-month period

were not isolated and "indicate a likelihood of future violations."  <u>See</u> <u>supra</u> ¶ xviii; (<u>see</u> SEC

56.1 ¶ 36; Defs. 56.1 ¶ 36); <u>SEC v. Shapiro</u>, 494 F.2d 1301, 1308 (2d Cir. 1974) ("First

offenders are not immune from injunctive relief," particularly where such offender "made not

one but seven [unlawful transactions which were the basis for the SEC action] in the space of

six weeks."); <u>see also</u> <u>Softpoint</u>, 958 F. Supp. at 866.  Vincent Verdiramo maintains in the

face of compelling evidence to the contrary that his conduct was legal (<u>see</u> Defs. Mem. at 1

("Richard and Vincent [Verdiramo] did *not* engage in the unlawful offer and sale of the

securities of RECOV . . . ." (emphasis in original))), and he has provided no assurances

against future violations (<u>see</u> Defs. Mem. at 14–16); <u>see also</u> <u>Cavanagh II</u>, 2004 WL

1594818, at *29; <u>Platinum</u>, 2006 WL 2707319, at *4; <u>SEC v. Lorin</u>, 76 F.3d 458, 461 (2d

Cir. 1996) ("[T]he court may properly view a culpable defendant's continued protestations of

innocence as an indication that injunctive relief is advisable.").  His reliance on the Rothstein

Opinion (<u>see</u> Defs. Mem. 10–12, 16) also "illustrates [his] efforts to shift blame and

responsibility for [his] illegal actions."  <u>Cavanagh II</u>, 2004 WL 1594818, at *29; (<u>see</u> Defs

Mem. at 11.)  And, as an attorney practicing in the area of securities regulation, <u>see</u> <u>supra</u>

¶¶ ii, x; (<u>see</u> Conway Decl. Ex. 20R), Vincent Verdiramo is engaged in an occupation which

presents future opportunities for violations of the securities laws.  <u>See</u> <u>supra</u> ¶¶ ii, x; <u>see also</u>

<u>Cavanagh II</u>, 2004 WL 1594818, at *29; <u>see also</u> <u>SEC v. Grossman</u>, 887 F. Supp. 649, 660

(S.D.N.Y. 1995) ("[T]he possibility that [the defendant] may continue to practice law in the

future raises the specter of further misconduct.").

### Richard Verdiramo

The SEC is entitled to injunctive relief against Richard Verdiramo preventing him from committing future violations of Sections 5, 13(d), and 16(a).  See SEC v. Tecumseh Holdings Corp., No. 03 Civ. 5490, 2009 WL 4975263, at *5–6 (S.D.N.Y. Dec. 22, 2009). Richard Verdiramo has been found above to have violated Section 5 of the Securities Act and Sections 13(d) and 16(a) of the Exchange Act.  See supra pages 20–22.  As the Chairman, CEO, President, and CFO of RECOV from 2000 to 2006, see supra ¶ vi, Richard Verdiramo's authorization of the issuance of shares to individuals, including his father, who soon thereafter sold such shares in unregistered transactions was, at the very least, reckless, see supra ¶¶ viii, xi, xvii; see Cavanaugh II, 2004 WL 1594818, at *29; SEC v. Aqua-Sonic Prod. Corp., 524 F. Supp. 866, 879 (S.D.N.Y. 1981) (citing Oleck v. Fischer, 623 F.2d 791, 794 (2d Cir. 1980)).  Also, reckless was Richard Verdiramo's failure to report to the SEC his own personally authorized acquisition of over 70% of RECOV's outstanding shares in April 2005.  See supra ¶¶ xii, xiii.  These failures to comply with federal securities law were not isolated events.  See supra ¶¶ viii, xi, xiv–xv; see Shapiro, 494 F.2d at 1308.  With respect to his Section 5 violations, Richard Verdiramo personally signed, over the course of four months, four separate Board resolutions authorizing the issuance of shares to various individuals, including Vincent Verdiramo, Richard Verdiramo, Chen, and Meyer.  See supra ¶¶ viii, xi, xiv–xv; (see SEC 56.1 ¶¶ 12–13, 16–18; Defs. 56.1 ¶¶ 12–13, 16–18); Shapiro, 494 F.2d at 1308.  Richard Verdiramo continues to maintain that his conduct was legal and has provided no assurances against future violations.  (See Defs. Mem. at 1, 14–18); see also Cavanagh II, 2004 WL 1594818, at *29; Platinum, 2006 WL 2707319, at *4.  And, Richard Verdiramo, who is now CEO and President of Public Entity Acquisition Corporation, a New

Jersey corporation, "is responsible for and certifies . . . company filings" (SEC Reply at 11),

and clearly engaged in an occupation which presents future opportunities for violations of the

securities laws.  See supra ¶ vi; (see SEC 56.1 ¶ 1; Defs. 56.1 ¶ 1); see also Cavanagh II,

2004 WL 1594818, at *29; see also Softpoint, 958 F. Supp. at 867; SEC v. United States

Envtl., Inc., No. 94 Civ. 6608, 2003 WL 21697891, at *32 (S.D.N.Y. 2003); see also SEC v.

Am. Bd. of Trade, Inc., 750 F. Supp. 100, 101 (S.D.N.Y. 1990).

### Chen

The SEC is also entitled to injunctive relief against Chen preventing her from

committing future violations of Section 5.  See SEC v. World Info. Tech., Inc., 590 F. Supp.

2d 574, 577 (S.D.N.Y. 2008).  Chen violated Section 5 of the Securities Act when she sold

her RECOV shares in unregistered transactions on fifteen separate occasions between July

20, 2005 and September 13, 2005.  See supra page 22, ¶¶ xvii; (see SEC 56.1 ¶ 32); Shapiro,

494 F.2d at 1308; Softpoint, 958 F. Supp. at 866.  Chen failed to appear for her deposition in

this matter and/or to file an opposition to the SEC's motion for partial summary judgment.

She has also failed to acknowledge her wrongdoing and/or to provide assurances against

further violations.  See SEC v. Pierre, No. 02 Civ. 253, 2003 WL 21488014, at *5 (S.D.N.Y.

June 27, 2003); SEC v. China Energy Sav. Tech., Inc., No. 06 Civ. 6402, 2008 WL 6572372,

at *8 (E.D.N.Y. Mar. 28, 2008); see also SEC v. One or More Unknown Traders in Common

Stock of Certain Issuers, No. 08 Civ. 1402, 2009 WL 3233110, at *5 (E.D.N.Y. Oct. 2,

2009).  As Principal of Greenwood Capital, Inc., Chen is in a position to commit future

violations of the securities laws.  (See SEC 56.1 ¶ 11); China Energy, 2008 WL 6572372, at

*8; Pierre, 2003 WL 21488014, at *5.

**Disgorgement**

The SEC argues that Defendants' "ill-gotten gains" from "the[ir] sales of unregistered securities . . . should be disgorged."  (SEC Mem. at 11.)  Vincent and Richard Verdiramo counter that there are "no grounds for disgorgement" because neither of them "has ever previously been sued by the SEC," "the events at issue took place years ago," and "[i]n all the years since the events at issue, the SEC has never pursued any other claim of violation regarding the Verdiramo[s'] business activities."  (Defs. Opp'n at 19.)

"As an exercise of its equity powers, a court may order defendants to disgorge their earnings from violations of the securities law."  SEC v. Fishbach Corp., 133 F.3d 170, 175 (2d Cir. 1997).  "The primary purpose of disgorgement as a remedy for violation of the securities law is to deprive violators of their ill-gotten gains, thereby effectuating the deterrence objectives of those laws."  SEC v. Credit Bancorp, Ltd., No. 99 Civ. 11395, 2011 WL 666158, at *1 (S.D.N.Y. Feb. 14, 2011) (citing SEC v. Wang, 944 F.2d 80, 85 (2d Cir. 1991)).  "[D]isgorgement need only be a reasonable approximation of profits causally connected to the violation."  SEC v. Warde, 151 F.3d 42, 50 (2d Cir. 1998).  "When disgorgement is ordered in an SEC-initiated proceeding, the IRS underpayment rate is appropriate."  Cavanagh II, 2004 WL 1594818, at *29.

Vincent Verdiramo, Chen, and Richard Verdiramo are obligated to disgorge profits from the unregistered sale of shares (described above) because the "deterrent effect of an SEC enforcement would be greatly undermined if securities law violators were not required to disgorge illicit profits."  SEC v. Svoboda, 409 F. Supp. 2d 331, 344 (S.D.N.Y. 2006) (quoting SEC v. First Jersey Sec. Inc., 101 F.3d 1450, 1474 (2d Cir. 1996)); see SEC v.

AbsoluteFuture.com, 393 F.3d 94, 97 (2d Cir. 2004); SEC v. Calvo, 378 F.3d 1211, 1215 (11th Cir. 2004); Tecumseh Holdings, 2009 WL 4975263, at *6.

The matter is referred to United States Magistrate Judge Andrew J. Peck for a determination of the appropriate amount of disgorgement.

**V.      Conclusion and Order**

For the reasons stated herein, the SEC's motion for partial summary judgment [#45] is granted.  This matter is referred to United States Magistrate Judge Andrew J. Peck for further proceedings as to the amounts to be disgorged.

The parties shall appear before the Court for a status/pretrial conference on Thursday, September 15, 2011 at 9:30 a.m. in Courtroom 21B of the United States Courthouse, 500 Pearl Street, New York, New York.


Dated: New York, New York
        September 9, 2011

RICHARD M. BERMAN, U.S.D.J.

32