```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/27/12
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------x
UNITED STATES SECURITIES AND :
EXCHANGE COMMISSION, :
    :
         Plaintiff, :
    :     10 Civ. 1888 (RMB) (AJP)
  - against - :
    :     **OPINION & ORDER**
RICHARD VERDIRAMO, VINCENT :
VERDIRAMO, EDWARD MEYER, JR., :
and VICTORIA CHEN, :
    :
         Defendants. :
----------------------------------------------------------x

      Having reviewed the record herein, including, without limitation, **(i)** the Decision & Order of the Court, dated September 9, 2011 ("September 9, 2011 Decision & Order"), among other things, granting summary judgment in favor of the Securities and Exchange Commission ("SEC") against Victoria Chen ("Chen") because "Chen sold 158,333 RECOV shares between July 20, 2005 and September 13, 2005" although "[n]o registration statement was filed or on file in 2005" and because "Chen has not asserted, much less presented evidence, that any registration exception applied to her unregistered sale of shares"; **(ii)** the Order of the Court, dated January 13, 2012, adopting the November 10, 2011 Report & Recommendation of Magistrate Judge Andrew Peck and directing Chen to "disgorge $40,284 and pay $16,453 in prejudgment interest"; **(iii)** the Judgment, dated January 17, 2012, for disgorgement and prejudgment interest; **(iv)** the SEC's application for an order to show cause, filed October 1, 2012 (Pl. SEC's Mem. in Supp. of Mot. for Order to Show Cause Why Victoria Chen Should Not Be Ordered to Pay a Civil Money Penalty and Be Subject to a Penny Stock Bar, dated Oct. 1, 2012 ("SEC Mem.")), arguing, among other things, that Chen "recklessly disregarded the regulatory requirements mandated by Section 5 [of the Securities Act of 1933, 15 U.S.C. § 77e]" and also "repeatedly refused to appear for her deposition notwithstanding

multiple accommodations by this Court and the SEC's willingness to travel to Canada to take her deposition"; **(v)** the Order to Show Cause, dated October 4, 2012, directing that Chen appear in Court on November 15, 2012 to show cause why she should not be subject to a permanent penny stock bar and ordered to pay a civil monetary penalty and directing Chen to file with the Court any statement of points and authorities in opposition to the SEC's application by October 29, 2012; and applicable legal authorities, **the Court hereby imposes a permanent penny stock bar against Chen and orders a civil monetary penalty, as follows:**

    1)     The Court has jurisdiction over Chen. See Grammenos v. Lemos, 457 F.2d 1067, 1070 (2d Cir. 1972). Following the filing of the Complaint, Chen appeared through her counsel, Gregory Bartko, on May 4, 2010; August 13, 2010; September 14, 2010; and October 6, 2010. (See Hr'g Trs., dated May 4, 2010, Aug. 13, 2010, Sept. 14, 2010 and Oct. 6, 2010.) At the May 4, 2010 conference (at which Mr. Bartko appeared by phone), the SEC advised the Court that "Mr. Bartko has made some overtures of possibly settling the case, although we haven't had any detailed discussions." (Hr'g Tr., dated May 4, 2010, at 4:12–14.) At the conference before Magistrate Judge Peck on August 13, 2010 (at which Mr. Bartko appeared by phone), Mr. Bartko stated:

> I will report to the Court that I think that—[the SEC] and I have exchanged a couple of letters, plus had at least a couple of substantive conversations about settlement. I am optimistic this case can be settled. . . . I personally would like to see my client's claims remanded in mediation for a settlement conference. . . .
> THE COURT: Okay.  I will []sign, today or Monday, a mediation order for everybody. . . . [T]he client has to be here in person . . . It is not telephonic. It is not just lawyers. It is lawyers and clients.

(Hr'g Tr., dated Aug. 13, 2010, at 5:12–16, 7:2–4, 8:8–18.) At the conference before Magistrate Judge Peck on October 6, 2010 (at which Mr. Bartko appeared by phone), Mr. Bartko reported the following: "[M]yself and my client—have agreed to continue

[mediation] on [October] 28th. . . . [W]e are having some discussions directly with the SEC in terms of settlement." (Hr'g Tr., dated Oct. 6, 2010, 5:22–6:9.)

Chen also appeared in person with Mr. Bartko on September 14, 2010. (See Hr'g Tr., dated Sept. 14, 2010); see also Ruddies v. Auburn Spark Plug Co., 261 F. Supp. 648, 651 (S.D.N.Y. 1966) ("[A] voluntary appearance is [one] means by which a court acquires jurisdiction over the person of a defendant."). One purpose of the September 14, 2010 conference was to conduct a hearing pursuant to United States v. Curcio, 680 F.2d 881 (2d Cir. 1982) which was necessitated by Mr. Bartko's then pending (unrelated) indictment in North Carolina for, among other things, selling securities "when no registration statement was filed with the S.E.C. and in effect." Indictment, ¶ 13, No. 09 Cr. 321 (E.D.N.C. Jan. 6, 2010). The following colloquy took place between the Court and Chen:

> THE COURT: [Y]ou're aware that there is a potential conflict of interest that your attorney, Mr. Bartko, has in representing you in this case brought about by virtue of the fact that he has been indicted in another matter for . . . securities-related issues.
> MS. CHEN: Yes, I am.

(Hr'g Tr., dated Sept. 14, 2010, at 13:8–14.)

> THE COURT: So, what has been put forth is the possibility that because of Mr. Bartko's indictment, he might not, with complete zeal and dedication, represent you in this case. . . . Do you understand that possibility?
> MS. CHEN: I understand that possibility, but I do not feel that that's the case. . . . I feel very confident in how Mr. Bartko is representing me.

(Id. at 16:16–17:3.)

> THE COURT: Do you think you fully understand the nature of this potential conflict or do you want more information about it?
> MS. CHEN: I understand it. I don't think that I need more advice regarding the conflict.

(Id. at 18:17–21.)

> THE COURT: Do you understand that by continuing with Mr. Bartko, you are waiving your right—you're giving up your right to be represented by an attorney who has no potential conflict of interest? Do you realize that?
> MS. CHEN: Yes, I do.
>
> THE COURT: And so you would not be able, for example, to claim, let's say you go through the mediation tomorrow, there's some outcome, you would not be able to later claim as a result of this waiver here today that that determination is not suitable or binding or favorable to you because Mr. Bartko was your attorney for that proceeding? . . . [Y]ou would not be able to claim in the future that in any situation where here, for example, where Mr. Bartko represents you, that that proceeding is invalid or inappropriate or void because Mr. Bartko had this problem.
> MS. CHEN: Yes.

(Id. at 19:15–20:15.)

> THE COURT: So, it's your understanding, and you agree that it's your wish to continue with Mr. Bartko in this case, including in the mediation tomorrow, for the long run?
> MS. CHEN: Yes.

(Id. at 21:20–23.)

The Court made the following finding:

> [I]t is my determination that Ms. Chen is fully aware of her rights in this matter, including to speak with other counsel, to have other counsel, and that she voluntarily and knowingly has waived those rights and that she, in light of this discussion, wishes to continue with Mr. Bartko as her attorney and will not object to, after the fact, [] any outcome or proceeding, including in tomorrow's mediation or other proceeding in this case.

(Id. at 24:8–15.)

Mr. Bartko was convicted on November 18, 2010; he was also disbarred. See Order, No. 09 Cr. 321 (E.D.N.C. Nov. 18, 2010); see also (September 9, 2011 Decision & Order at 3).

At the conference before Magistrate Judge Peck on December 14, 2010, at which neither Bartko nor Chen appeared, the SEC reported that Chen had not appeared for a deposition and that the SEC had "sent her an e-mail recently asking for dates for her [rescheduled] deposition and had[n't] heard anything back." (Hr'g Tr., dated Dec. 14, 2010, at 2:8–10.) Judge Peck stated:

4

> At the rate [Chen] is going, I strongly suspect she has effectively defaulted . . . it looks like she has no interest in defending herself, or is unable to defend herself, for reasons that are not sufficiently recorded. . . . If she doesn't appear for a deposition in New York or Washington, D.C. . . . she will be in default."

(Id. at 5:12–6:1, 7:5–8.)

At the conference before the Court on January 6, 2011, at which neither Bartko nor Chen appeared, the SEC advised the Court that Chen had not appeared for a deposition and that Chen was "at the present moment proceeding pro se" and that she had emailed the SEC "around December 15" and stated that she was "in the process of trying to retain an attorney, and that [the SEC] would hear from her in the near future." (Hr'g Tr., dated Jan. 6, 2011, at 2:20–3:13.) The Court stated the following:

> The message I would like [the SEC] to convey to [Chen] for me, and the best way to do it is to order a copy of the transcript of this proceeding and forward that to her, is that she needs ASAP to come into compliance with Judge Peck's determination that her deposition should be taken . . . Otherwise, she's going to face the prospect of even potentially being in contempt of an order.

(Id. at 4:13–21.)[1]

It appears from the record that Chen never retained new counsel and that she failed to further participate in the case after her January 6, 2011 letter.

At the conference before the Court on February 24, 2011, at which Chen did not appear herself or by counsel, the Court observed: "[Chen] does not have an attorney apparently or new

---

[1] Chen also wrote to Judge Peck, stating:

> Due to my health, I cannot deal with these matters on my own and my medical team does not advise that I subject myself to a deposition at this time and certainly not without counsel. . . . I respectfully request more time to be able to [] gain proper representation so I can be deposed and continue to defend myself in these matters.

(Letter from Victoria Chen to Judge Peck, dated Jan. 6, 2011.)

substituted counsel at this time. . . . On February 8, 2011, the SEC requested permission to file a motion for default against Ms. Chen, and that application has been granted." (Hr'g Tr., dated Feb. 24, 2011, at 4:10–19.) The Court also stated:

> "[T]here is sort of a dual track. One way would be to file the motion for summary judgment . . . against Ms. Chen. And if she failed to respond to that, [the SEC] would get [its] default after that. Another is to proceed for default by virtue of Judge Peck's determination that [Chen] has not participated in discovery . . . ."

(Id. at 5:19–25.)

At the conference before the Court on December 19, 2011, at which Chen did not appear herself or by counsel, the Court stated the following: "[W]ith respect to Ms. Chen, there's never been any waiver of her requirement to appear at today's conference or any other conference, but she has consistently I think failed to appear or to find counsel to represent her . . . . She is obligated to be here and is in default, as it were, with respect to her appearances." (Hr'g Tr., dated Dec. 19, 2011, at 7:11–17.) The Court also was advised by counsel present at the conference: "[Chen] has never contacted us. Everything has been sent to her that we filed, and some of it's come back to us. She's never updated her address on the Court's docket. Her e-mails, though, are not coming back to me that I sent." (Id. at 6:19–22.)

The Court is aware that some documents sent to Chen's mailing address and email address of record have been returned marked "return to sender" or "not delivered." (See id.; see also Hr'g Tr., dated Nov. 15, 2012, at 4:6–5:9.) If Chen has, in fact, changed these addresses, she has not apprised the Court of a new mailing address, if any, or a new email address. Orix Fin. Services, Inc. v. Thunder Ridge Energy, Inc., 579 F. Supp. 2d 498, 510 (S.D.N.Y. 2008) ("It is a responsibility of all litigants, including pro se litigants, to inform the court and opposing parties of a change in

address."); Am. Arbitration Ass'n, Inc., v. Defonseca, No. 93 Civ. 2424, 1997 WL 102495, at *2 (S.D.N.Y. Mar. 6, 1997); see also "A Manual for Pro Se Litigants Appearing Before the United States District Court for the Southern District of New York," dated Jan. 2011, at 6 ("[Y]ou must immediately notify the Pro Se Office in writing of any change of your address.").

2)   During these proceedings, Chen, as noted, has failed to comply with various court orders, including Magistrate Judge Peck's directives to appear for a deposition or face sanctions (including a possible default judgment), dated October 27, 2010, December 1, 2010, and January 10, 2011. (See memo endorsements, dated Oct. 27, 2010, Dec. 1, 2010, and Jan. 10, 2011.) "If Ms. Chen is unable to participate in discovery, as the Court previously warned her, the Court has no choice but to strike her answer and allow the SEC to proceed for a default judgment as to damages and/or penalties." (Memo Endorsement of Magistrate Judge Andrew Peck, dated Jan. 10, 2011.) She has also failed to respond to the Court's order to show cause, dated October 4, 2012, directing that Chen appear on November 15, 2012 and directing her to file any opposing statement of points and authorities by October 29, 2012. She neither appeared nor made any written filing.

3)   The Court finds that a permanent penny stock bar against Chen is appropriate. See SEC v. Patel, 61 F.3d 137, 141 (2d Cir. 1995); see also SEC v. Univ. Exp., Inc., 475 F. Supp. 2d 412, 429 (S.D.N.Y. 2007). As the Court determined in the September 9, 2011 Decision & Order, "Chen violated Section 5 of the Securities Act when she sold her RECOV shares in unregistered transactions on fifteen separate occasions between July 20, 2005 and September 13, 2005" and "has also failed to acknowledge her wrongdoing and/or to provide assurances against further violations." (September 9, 2011 Decision & Order at 30). According to the SEC, at the time of the RECOV stock sales, Chen was "familiar with the registration requirements mandated by Section 5 of the Securities Act." (SEC Mem. at 2); see also 475 F. Supp. 2d at 429. Chen's unregistered sales were

"intended to camouflage [an] unregistered public distribution" of RECOV and constituted a "reckless[] disregard] [of] the regulatory requirements mandated by Section 5." (SEC Mem. at 4–5); see also 475 F. Supp. 2d at 429. Chen signed a "sham" contract to purchase a controlling interest in RECOV and subsequently was issued 333,333 shares of RECOV "despite the fact that Chen had made no payments." (SEC Mem. at 2, 5.)

4) The Court also finds that a civil monetary penalty is appropriate. (See September 9, 2011 Decision & Order at 8, 22, 30–31; Order, dated Jan. 13, 2012, at 1–2); see also SEC v. Kern, 425 F.3d 143, 153 (2d Cir. 2005). 15 U.S.C. § 77t(d) "authorizes three tiers of civil monetary penalties against violators of the Act. . . . The tier determines the maximum penalty, with the actual amount of the penalty left up to the discretion of the district court." 425 F.3d at 153; see also SEC v. Colonial Inv. Mgmt. LLC, 381 F. App'x 27, 32 (2d Cir. 2010). The determination of the amount of civil monetary penalty is referred to Judge Peck for hearing or inquest. The SEC is directed forthwith to contact Judge Peck to determine an appropriate method for notifying Chen of any hearing or inquest and a schedule for written support and any opposition regarding the appropriate amount of civil penalty, as may be requested by Judge Peck. See SEC v. Nnebe, No. 01 Civ. 5247, 2003 WL 402377, at *2 (S.D.N.Y. Feb. 21, 2003).

Dated: New York, New York
November 27, 2012

/s/ RMB
_____
RICHARD M. BERMAN, U.S.D.J.